**In re Bryce K. HAUGLAND, Mark A. Haugland, Debtors.**

**Bankruptcy Nos. 3–87–655, 3–87–656.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

March 4, 1988.

---

**1.** Although the contract period is for the years 1987 to 1996, only the payments for 1987 are at issue in this proceeding.

Robert Maus, Austin, Minn., for Farmers State Bank of Lyle.

Steven Rizzi, Austin, Minn., for debtors.

Timothy Moratzka, Hastings, Minn., Trustee.

ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

Before the Court are Debtors'[1] motions: for determination of secured status regarding a 7720 John Deere combine, including its corn and bean heads; and for avoidance of Farmers State Bank's (Bank) lien on the combine under 11 U.S.C. § 506(d) and, if necessary, 11 U.S.C. § 522(f). An evidentiary hearing to determine the value of the combine was held on December 18, 1987. Robert Maus appeared for Farmers State Bank of Lyle. Steven Rizzi, Jr., appeared for Debtors. The Court requested that the parties brief the issue of whether a lien on property, owned by a Chapter 7 debtor as a result of exemption or abandonment, can be avoided under 11 U.S.C. § 506(d). Now, based on the arguments and memoranda of counsel, the record and files herein, and the Court being fully advised in the matter, the following Order is made pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

Debtors filed for bankruptcy under Chapter 7 on March 5, 1987. They each claimed a one-half interest in a 7720 John Deere combine, including its corn and bean heads, purchased under a retail installment contract on January 6, 1983. John Deere has a purchase money security interest in the combine. Debtors defaulted on payments due under the contract and, as of April 30, 1987, owed John Deere a balance of $35,956.44. By written stipulation dated July 1, 1987, and filed on August 3, 1987, Debtors reaffirmed this debt.

During 1984 and 1985, Debtors executed several promissory notes to the Bank in exchange for loans totalling $40,800.00. These notes were secured in part by equipment, including a second lien on the 7720 combine. Debtors defaulted on the notes and, at the time they filed for bankruptcy, owed the Bank $33,300.00.

---

1. Debtors are brothers and have filed separate bankruptcy petitions. Their motions, the parties, and property involved in each motion, are identical. Thus, this Order applies to both Debtors.

Debtors did not claim the combine as exempt property on their Schedules B–4 filed with the bankruptcy petitions. However, they valued the machine at $30,000.00, and on December 4, 1987, the trustee abandoned it back to the Debtors.

Debtors now seek a determination of the value of the combine and an order voiding the Bank's lien on it under 11 U.S.C. § 506(d). Debtors claim: that John Deere's security interest in the combine is prior to the Bank's lien; that Deere's lien fully encumbers the machine; and, accordingly, that the Bank's lien is not supported by any value in the collateral. But to the extent that the Bank's lien might survive a § 506(d) challenge, the Debtors request that they be allowed to exempt the combine and avoid the lien under § 522(f).[2]

The Bank concedes that John Deere's lien is prior to its own, but contends that the combine is worth $58,000.00. The Bank claims: that its lien is supported at least, in part, by the value of the collateral; that 11 U.S.C. § 506(d) cannot be used to void a lien on abandoned or exempt property; and, that because the combine is no longer property of the estate, it should be allowed to enforce its lien in state court. The Bank also argues that Debtors cannot, at this late date, exempt the combine for purposes of avoiding the Bank's lien under 11 U.S.C. § 522(f).

### II.

Four appraisals of the 7720 John Deere combine have been submitted to the Court, three by Debtors and one by the Bank. Two of Debtors' appraisers, Chuck Thorson and Dave Norby, valued the combine at $38,000.00, and one, Arthur Hollerud, valued it at $35,000.00.[3] The Bank's appraiser, James E. Walter, valued the combine at $58,000.00. Norby, Thorson and Walter testified in Court as to their appraisals. Hollerud's testimony was presented to the Court through deposition. Based on: the appraisers' relevant experience and background; apparent knowledge of farm machinery in general, and 7720 combines in particular; method of forming of an appraisal; and the consensus of three of the four appraisers; the Court finds that the 7720 combine had a value of $38,000.00 at the time Debtors filed for bankruptcy.

Debtors' appraisers, particularly Thorson and Norby, worked for many years with farm machinery, including John Deere combines, in a capacity that required knowledge of the quality and value of the machines. Thorson has auctioned farm machinery since 1963 and currently is operating an auction yard for large machinery. Norby has worked with John Deere equipment in retail and as a mechanic since the early 1970s. Walter has had more formal education with respect to agriculture generally than the other appraisers, but is less experienced. He entered the appraisal business only three and a half years ago and completed course work regarding appraising only one year ago. Much of Walter's recent work has been writing insurance policies on farm equipment.

It is apparent to the Court that Debtors' appraisers have a significantly greater familiarity with farm equipment and machinery than did Walter. They appeared to have a better general understanding of what parts on farm equipment need to be investigated and what factors to look for when valuing equipment. Further, Debtors' appraisers seemed to have conducted a more thorough investigation of the combine than did Walter.

---

2. The lien could survive the § 506(d) challenge to the extent that either: 1) as a matter of law, the section might not apply to nonestate property of a debtor; or, 2) the value of the combine is found to exceed Deere's lien, thereby, resulting in value to the Bank's second lien.

3. Arthur Hollerud's appraisal was actually made as a result of his employment by the Bank. In June 1987, the Bank hired Hollerud to appraise several pieces of the Haugland's equipment. Michaele Bednar, the Bank's Executive Vice President, told Hollerud that an appraisal of the combine was not needed in light of the Bank's apparently undersecured position with respect to it. There is some dispute as to whether Bednar nevertheless asked Hollerud to take a look at the combine and give her his opinion of its value. Hollerud, in any case, conducted a formal appraisal of the combine, which the Court believes has sufficient weight to collaborate the appraisals of Thorson and Norby.

In arriving at his appraisal, Walter relied heavily on farm manuals that list prices at which farm equipment has been sold around the country. In particular, Walter appeared to rely on sale prices on combines in excellent condition. Debtors' appraisers credibly testified that: (1) the combine was in good, but not excellent condition; and (2) that the manuals are not a reliable means of appraising a particular piece of machinery; they give limited information as to the condition of the piece of equipment sold, the relevant market economy where the sale occurs, and the financing terms of the sale. Debtors' appraisers testified that physical inspection of machinery must be the primary basis for an appraisal.

In light of the above, and of the fact that three of four appraisers valued the combine at approximately $38,000.00, the Court is persuaded that Walter's appraisal is inflated. The Court concludes that the combine has a value of $38,000.00 for purposes of this motion.[4]

11 U.S.C. § 506(d) states: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...." An allowed secured claim is defined in § 506(a) which provides that "an allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...."

■ The Bank argues that as the combine has been abandoned, the estate has no interest in it and, therefore, § 506 is inapplicable. The Court disagrees. Section 506 applies to property that once was, but no longer is, property of the estate. *See* 11 U.S.C. § 522(c)(2)(A)(ii) (liens on exempt property may be voided under § 506(d)); *see also In re Gibbs*, 44 B.R. 475, 478 (Bankr.D.Minn.1984) (In a Chapter 7 case the use of § 506(d) "would almost always be by debtors on exempt property or on property that had been abandoned by the trustee.")

■ Accordingly, the Bank's lien on the combine is void under 11 U.S.C. § 506(d) to the extent that it secures a claim in excess of its allowed secured claim. The Bank has an allowed secured claim in the combine to the extent of $38,000.00, less any prior liens. John Deere has a first lien on the combine valued on April 30, 1987 at $35,-956.44. Assuming John Deere's claim has continued to collect interest, it is doubtful the Bank has an allowed secured claim with respect to the combine. In any case, the Bank's allowed secured claim is at most $2,043.66.

■ Assuming that the Bank's lien is worth $2,043.66, it is avoidable under 11 U.S.C. § 522(f). Since the combine has been abandoned by the estate, the question of exempting it from the estate is moot. However, the language of § 522(f) is sufficiently broad to allow for lien avoidance with respect to abandoned property.[5] Accordingly, because the Debtors can each avoid the Bank's lien in farm equipment up to a value of $5,000.00, the entire potential value of the lien in the amount of $2,043.66 is avoidable under the statute.

ACCORDINGLY, IT IS HEREBY ORDERED: The lien of Farmers State Bank on Debtors' 7720 John Deere combine, along with its bean and corn heads, is partially void under 11 U.S.C. § 506(d); and the balance is avoided under 11 U.S.C.

---

4. The Bank contends that because Debtors' appraisers made their appraisals in late fall of 1987, after the harvest season, the appraisals do not accurately reflect the value of the combine at the time Debtors filed for bankruptcy. Hollerud's appraisal, however, was made in June of 1987. Although this is still several months subsequent to the filing of the bankruptcy petitions, no evidence was presented to the Court indicating that the market for combines changed significantly between March and June of 1987.

5. Section 522(f) provides, in pertinent part: "Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an *exemption to which the debtor would have been entitled under subsection (b) of this section* ..." (emphasis added). The Debtors would have been entitled to exempt their interest in the combine had it not been abandoned back to them. Abandonment cannot be used to deprive a debtor of § 522(f) lien avoidance rights. *See: In re Hahn*, 60 B.R. 69 (Bankr.D.Minn.1986).

§ 522(f). The lien is of no force or effect and the Bank shall cause it to be cancelled of record.