**In re Kathleen F. ZLOGAR, Debtor.**

**Kathleen F. ZLOGAR, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, State of Illinois, Department of Revenue and Ben Franklin Insurance, Defendants.**

**Bankruptcy Nos. 87 B 02814, 87 A 232.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 12, 1989.

James Egan, Phelan, Egan & Nolan, Joliet, Ill., for debtor.

Michael Gorcowski, Block, Krockey, Cernugel and Cowgill, P.C., Joliet, Ill., for Ben Franklin Ins.

Douglas Snoeyenbos, Washington, D.C., Internal Revenue Service.

James D. Newbold, Chicago, Ill., Illinois Dept. of Revenue.

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This cause coming on to be heard on the Debtor's motion for summary judgment on the Debtor's complaint to avoid liens on real property, pursuant to § 506(a) and (d) of the Bankruptcy Code, and the Court, having considered the record and pleadings on file in this case, having considered the memoranda of law submitted by the parties in support of their respective positions, and being fully advised in the premises, now enters its ruling.

This is a core proceeding over which the Court has jurisdiction, pursuant to Title 28 U.S.C. § 157(b)(2)(K). For the reasons set forth below, the Debtor's motion for summary judgment is granted in part and denied in part. The following constitutes the Court's findings of fact and conclusions of law, pursuant to Bankruptcy Rule 7052.

## BACKGROUND

The Debtor filed her Chapter 7 petition on February 2, 1987. The Debtor owns an undivided one-half interest in her residence. The fair market value of that one-half interest is said to be $40,000.00. There are liens on the Debtor's interest in the property which exceed the value of the Debtor's interest; the Internal Revenue Service holds a tax lien in the amount of $41,-511.16; the State of Illinois Department of Revenue holds a tax lien in the amount of $3,169.72; and the National Ben Franklin Insurance Co. holds a judgment lien in the amount of $136,271.97. There is also a first mortgage in favor of Lincoln Way Federal Savings and Loan in the amount of $7,208.00.[1]

The Debtor filed a complaint seeking a valuation of the real estate pursuant to § 506(a), a determination of the priorities of the lien interests, and the allowance of secured claims against the real estate in an amount equal to the value of her interest in the property. The complaint also seeks to avoid all liens in excess of the value of the

---

1. Lincoln Way Federal Savings and Loan is not    named as a party in the complaint.

Debtor's interest in the property, pursuant to § 506(d).

## DISCUSSION

This action presents a question as to the ability of a Chapter 7 Debtor to avoid liens on real property under § 506(d) to the extent that such liens exceed the value of the Debtor's interest in the property, for the sole purpose of retaining ownership of the property. As discussed below, a determination as to whether or not a Debtor in a Chapter 7 case may strip down [2] liens on property abandoned by a trustee is not dispositive of whether the Debtor may retain ownership of that property. *See, In re Lindsey*, 823 F.2d 189 (7th Cir.1987).

Based upon allegations in the complaint and a statement of uncontested facts, the Debtor seeks summary judgment, pursuant to the provisions of § 506(a) and (d), to determine the fair market value of the property in question, determine the priorities of the lien interests, allow the secured claims in an amount equal to the fair market value of Debtor's interest in the property, and extinguish the liens to the extent that any lien exceeds the fair market value of Debtor's interest in the property.

*Standards for Summary Judgment.*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir.1986); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 983 (7th Cir.1986). On a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Shlay*, 802 F.2d at 920; *Valentine*, 802 F.2d at 983. The principle inquiry is whether the evidence presents a sufficient disagreement to require trial or whether it is so one-sided that one party must prevail as a matter of law. *Anderson.*

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying the portions of the pleadings, depositions, answers to interrogatories, and affidavits which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. This is essentially a requirement that the moving party on a motion for summary judgment make a prima facie showing that it is entitled to summary judgment. 10A *Wright, Miller & Kane, Federal Practice & Procedure, Civil*, § 2727. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

The Court finds that the record and pleadings in this case present no genuine issue as to any material fact on the issue of whether § 506(d) is applicable. However, there are issues of material fact as to value of the Debtor's interest in the property, the priorities of the liens and the mortgage, and the extent to which the various claims are secured and unsecured. Therefore, summary judgment is appropriate as to the applicability of § 506(d). Summary judgment is not appropriate as to the value of the property, priorities of the liens and the

---

**2.** The phrase "stripping down" or "strip down" shall refer to the process of reducing a secured claim to the value of the underlying collateral. The genesis of the phrase is unknown but it is used in several of the cases cited in this Opinion. *See e.g., In re Lindsey*, 823 F.2d 189 (7th Cir.1987).

mortgage, and the extent to which the claims are secured and unsecured, and these matters will be set for hearing.

*Uncontested Facts.*

1. There are no unencumbered assets in this case. On May 12, 1987, the Trustee filed a no asset report, indicating its disinterest in pursuing, on behalf of the estate, the Debtor's one-half interest in the property.[3] As a result, title and the right to possession of the property rest in the Debtor.

2. The liens at issue secure valid underlying claims. The Debtor admits the validity of the claims.

The debt owed to the IRS is secured by a tax lien filed in March of 1982. The debt owed to the Illinois Department of Revenue was reduced to a judgment lien in June of 1982. There is no evidence before the Court as to the date of the lien held by National Ben Franklin Insurance nor of the mortgage held by Lincoln Way Federal Savings. Consequently, there is no basis upon which the Court may determine the relative priorities of the liens and the mortgage.

3. The liens and the mortgage exceed the value of the Debtor's one-half interest in the property. The Debtor states that the value of her interest in the property is $40,000. There is no evidence that this stated value is the actual fair market value of the property and the parties have not stipulated as to the value.

4. The debts owed to the IRS and the Illinois Department of Revenue arose in 1980, more than three years prior to the filing of the petition. Neither the IRS nor the Illinois Department of Revenue asserts that the Debtor's tax obligations are nondischargeable, but both oppose avoidance of their liens under § 506(d).

5. National Ben Franklin Insurance admits each of the allegations in the Debtor's complaint, except the allegation that the Debtor reported all of her income for the year 1980. Ben Franklin also opposes avoidance of its lien.

*Application of § 506(a) and (d).*

The dispute here involves whether the Debtor may avoid liens on property abandoned by a trustee in a Chapter 7 case for the sole purpose of retaining ownership. Simply put, the Debtor seeks to invoke § 506(a) to have the Court determine the secured status of the various liens on the Debtor's home. The Debtor wants to strip down the liens and then satisfy any allowed secured claim. To illustrate, assume that the value of the Debtor's one half interest is $40,000. Assume further that the mortgagee holds the first priority lien which secures a $40,000 debt. All other lienholders will be deemed to hold unsecured claims; they will receive no dividend on their claims and their debts will be discharged. The Debtor will emerge from the Chapter 7 case with her interest in the property intact by either satisfying the entire mortgage obligation or by bringing the payments on that obligation current. This result, says the Debtor, is consistent with the "fresh start" policy of the Bankruptcy Code. The lienholders, on the other hand, argue that in order strip down or avoid liens under § 506(d), there must be some bankruptcy related reason for doing so. They contend that the purpose asserted by the Debtor is not proper purpose under the Code.

Put in the context of the Bankruptcy Code, each of the defendants argues serially that § 506(d) does not apply in a Chapter 7 case, that the debtor cannot redeem under § 506(d) and that real property is excluded from the provisions of § 722. Their collective view of § 506(d) raises two questions: 1) whether a debtor can use § 506(d) to strip down liens on property abandoned by the trustee; and 2) assuming that strip

---

3. The parties have treated the filing and approval of the no-asset report as tantamount to abandonment of the estate's interest in the Debtor's one-half interest in the property. It is not. The no-asset report merely indicates that the Trustee does not intend to administer assets listed in the Debtor's schedules. It is only when the case is closed that the failure to administer scheduled assets constitutes an abandonment. [*See,* 11 U.S.C. § 554(c) ] For purposes of this motion, however, the Court will assume that the Debtor's interest in the subject property has been, or will soon be, abandoned by the Trustee.

down is appropriate, whether it may only be invoked as a device to effectuate the redemption provisions of § 722.[4]

Section 506 provides in pertinent part:

a) An allowed claim of a creditor secured by a lien on property in which the estate has interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or plan affecting such creditor's interest.

\*   \*   \*   \*   \*   \*

d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Under § 506(a), an undersecured allowed claim is bifurcated; the claim is secured to the extent of the value of the debtor's interest in the collateral and the remaining portion of the claim is unsecured. Under § 506(d), a lien that secures a claim that is not an allowed secured claim is void, with exceptions inapplicable to this case. The plain language of § 506, read as a whole, suggests that subsection (d) includes the undersecured portion of a bifurcated secured claim by operation of subsection (a).

There is nothing in the statute that prohibits its application to property that the trustee intends to abandon or limits its application to any particular purpose or chapter of the bankruptcy code.[5] The obvious purpose of the statute is to simply provide a mechanism for valuation of collateral in order to determine the status of secured claims, and there is nothing in the statute that suggests that it is intended to do more. This reading of § 506 would put the Debtor's objective squarely within the scope of the statute.

A minority of cases has held that § 506 cannot be used for the purpose sought by the Debtor because, a) real property is not included in § 722; b) this practice would create bad policy by discouraging reorganization; and c) this would permit unconstitutional takings of property. Several of these cases assume a relationship between § 506 and § 722 which is not apparent from the plain language of these provisions. Others read into § 506 requirements and restrictions as to the purposes for which it may be invoked, which are not included in the plain language of or legislative comments about the statute. *See, In re Verma*, 91 B.R. 17 (W.D.Pa.1987); *In re Dewsnup*, 87 B.R. 676 (D.Utah 1988); *In re Smith*, 79 B.R. 650 (D.Md.1987); *In re Gaglia*, 76 B.R. 82 (W.D.Pa.1987); *In re Maitland*, 61 B.R. 130 (E.D.Va.1986); *In re Cordes*, 37 B.R. 582 (C.D.Cal.1984); *In re Mahaner*, 34 B.R. 308 (W.D.N.Y.1983); *In re Harvey*, 3 B.R. 608 (M.D.Fla.1980). The views set forth in these cases are contrary to the clear language of § 506(d) and the majority of cases considering this issue. 3 *Collier on Bankruptcy*, ¶ 506.07 at p. 506–71 (15th ed. 1979). *See, Matter of Folendore*, 862 F.2d 1537 (11th Cir.1989); *In re Lindsey*, 823 F.2d 189 (7th Cir.1987); *In re*

---

**4.** Section 722 provides:

An individual debtor may, whether or not the debtor has waived the rights to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 544 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

**5.** The fact that the trustee may abandon his interest in the property goes to the issue of whether the estate has an interest in the property. Section 506 does not address the nature of property as property of the estate, but rather provides a jurisdictional basis for the Court to determine the status of secured claims.

*O'Leary,* 75 B.R. 881 (D.Or.1987); *In re Worrell,* 67 B.R. 16 (C.D.Ill.1986); *In re Cleveringa,* 52 B.R. 56 (N.D.Iowa 1985); *In re Lyons,* 46 B.R. 604 (N.D.Ill.1985); *In re Gibbs,* 44 B.R. 475 (D.Minn.1984); *In re Bracken,* 35 B.R. 84 (E.D.Pa.1983); *In re Brace,* 33 B.R. 91 (S.D.Ohio 1983); *In re Tanner,* 14 B.R. 933 (W.D.Pa.1981); *Walker v. First Federal Savings & Loan,* 11 B.R. 43 (N.D.Ill.1981); *See also, In re Crouch,* 76 B.R. 91 (W.D.Va.1987).

A majority of courts has refused to apply § 722 to restrict the use of § 506(a) and (d), and concluded that there is no doubt that liens on real property, including tax liens, may be avoided in a Chapter 7 case where they exceed the value of that property, irrespective of whether a debtor can redeem the property. *See, Matter of Folendore,* 862 F.2d 1537 (11th Cir.1989); *In re Lindsey,* 823 F.2d 189 (7th Cir.1987); *In re Tanner,* 14 B.R. 933 (W.D.Pa.1981); *In re Frost,* 19 B.R. 804 (D.Kan.1982), *rev'd on other grounds,* 47 B.R. 961 (D.Kan.1985).

As a result of the conclusions reached by the courts following the minority view, there are at least three rationales, and probably as many lines of cases, for concluding that § 506 is inapplicable to Chapter 7 cases: 1) § 506 is not applicable to property unadministered or abandoned by the trustee, *see, In re Dewsnup,* 87 B.R. 676 (D.Utah 1988); *In re Gaglia,* 76 B.R. 82 (W.D.Pa.1987); *In re Maitland,* 61 B.R. 130 (E.D.Va.1986); *In re Harvey,* 3 B.R. 608 (M.D.Fla.1980); 2) real property is excluded from § 722 and § 506(a) must be read with § 722, *see, In re Smith,* 79 B.R. 650 (D.Md.1987); *In re Cordes,* 37 B.R. 582 (C.D.Cal.1984); *In re Mahaner,* 34 B.R. 308 (W.D.N.Y.1983); *In re Harvey,* 3 B.R. 608 (M.D.Fla.1980); and 3) avoidance of liens under § 506 is an unconstitutional taking, *see, In re Mahaner,* 34 B.R. 308 (W.D.N.Y. 1983).

While the rationale supporting the minority view suggests that there are persuasive arguments on both sides of this issue, the Seventh Circuit Court of Appeals is among the majority. *See, In re Lindsey,* 832 F.2d 189. Even if this Court were not bound by *Lindsey,* the Court believes that the majority view is consistent with the plain language of § 506, giving the intended effect to the respective rights of debtors and secured creditors, both within and outside of bankruptcy, and is therefore the better reasoned approach.[6]

One of the earliest cases setting forth the majority view is *In re Tanner,* 14 B.R. 933 (W.D.Pa.1981), which held that a debtor could use § 506 to avoid a third mortgage. Applying the basic principles of statutory construction and reviewing pertinent case law, the court determined that reading subsection (d) in the context of § 506 as a whole supports the conclusion that 'lien' includes the lien of a real property mortgage, and applies to all types of liens. *Id.* at 935, 937. The court reasoned that the

"scheme of Section 506 is that creditors receive through the valuation procedure of the Bankruptcy Court the same property value that they would receive through a non-bankruptcy forced sale of the Debtor's non-exempt assets as of the petition date. Assuming the sale price is the market value, the Defendant would receive nothing under the forced sale. The property would pass to the purchaser free of the Defendant's lien. The operation of Section 506(d) merely effectuates the market place."

*Id.* at 935.

*Tanner* also addressed the issue of whether § 506 permits a deprivation of property in violation of substantial due process. The court stated that

voiding a mortgage to the extent that it is undersecured is not an actual deprivation of property. The lien holder is deprived of an empty legal right rather than a valuable property right. If a totally undersecured mortgagee brought

---

**6.** In addition to the plain language of § 506, the cases following the majority view also rely on the legislative comments to the 1984 amendments and the omission of real property from § 722, in reaching the conclusion that § 506 is applicable to Chapter 7 cases. As discussed below, many of these cases persuasively point out the flaws and shortcomings of the rationale followed by the minority.

an action in foreclosure, he would not receive anything but extinguishment of his lien. All that Section 506(d) does is allow in bankruptcy what would occur outside of bankruptcy in a foreclosure sale—the extinguishment of a lien lacking any present property value. The fact that a mortgagee may have some sort of expectancy interest based upon anticipated appreciation or increase in equity does not require a different conclusion, since it would be extinguished in a foreclosure proceeding.

14 B.R. at 938. *See also, O'Leary,* 75 B.R. at 885 (following *Tanner*).

There was a dearth of case law on the application of § 506(d) when *Tanner* was decided, but as the court noted, those cases which had applied or discussed § 506(d) gave no "indication[ ] that a real property mortgage is to be treated as a form of 'super lien' exempt from avoidance." *Id.* at 938. *See also, Walker v. First Federal Savings & Loan,* 11 B.R. 43 (N.D.Ill.1981); *Pitre v. First Federal Savings and Loan Association of Chicago,* 11 B.R. 777 (N.D. Ill.1981); *Geiger v. Geiger,* 12 B.R. 410 (E.D.Wis.1981); *In re Hotel Associates, Inc., et al,* 3 B.R. 340 (E.D.Pa.1980). The court in *Tanner* also noted that § 506(d) applies to all types of liens. 14 B.R. at 937. This conclusion is echoed by the majority of cases deciding this issue.

The Defendants also assert that to allow lien avoidance will frustrate the Congressional policy of encouraging reorganization, by allowing a debtor to receive in Chapter 7 more than could be obtained in Chapter 13 or Chapter 11. Defendants cite § 1322(b)(2) which prohibits a Chapter 13 debtor from modifying the terms of a mortgage on his principal residence and § 1111(b)(2) which allows a secured creditor, in Chapter 11, to elect to retain its lien for its full amount. This argument was considered in *O'Leary* and rejected. 75 B.R. at 884. The court stated that "this argument looks at lien avoidance as if it existed in a vacuum. Lien avoidance is only one of a myriad of factors a debtor may consider when choosing between bankruptcy chapters. Each chapter contains its own special inducements and restrictions

... 'If § 506(d) is one of those provisions that makes Chapter 7 attractive for individual debtors, that is a decision that Congress has made and it is something for Congress to change if it sees fit.'" *Id.,* (quoting *Gibbs* ).

In *Lindsey,* the Court of Appeals for the Seventh Circuit considered the question of whether the lien avoidance provision could be used to prevent a creditor from foreclosing its stripped down lien. The debtors in *Lindsey* were hog farmers who owned real estate that was subject to a first mortgage in the amount of $209,000 and a second mortgage in the amount of $341,000. The second mortgage was secured primarily by farm equipment, and the second mortgage on the real estate provided additional collateral. Shortly after the debtors defaulted on the mortgages, the debtors filed a Chapter 7 petition. The trustee abandoned the property because there was no equity for unsecured creditors. The bankruptcy court found the market value of the real estate to be $233,000. As a result, all of the first mortgage was secured while only $24,000 of the second mortgage was secured. The debtors were given 30 days to redeem their property by paying the creditors $233,000, but the debtors appealed instead of redeeming; the automatic stay was lifted and the creditors began foreclosure proceedings. The debtors argued in the district court that the bankruptcy court should have allowed them to continue to make the monthly payments specified in the first mortgage and established a payment schedule for the stripped-down second mortgage. The district court affirmed the bankruptcy court and the debtors appealed to the Court of Appeals for the Seventh Circuit.

The Seventh Circuit noted that the combined effect of § 506(a) and (d) is to strip down a lien to the value of the security. 823 F.2d at 189. Then, addressing the effect of bankruptcy upon liens, the court stated that:

[t]he presence of the mortgagees in the bankruptcy proceeding requires comment, in view of the old saw (which, as this case shows, is no better than a half-

truth) that liens pass through bankruptcy unaffected. *See, e.g., In re Tarnow,* 749 F.2d 464, 466 (7th Cir.1984) ... If ... liens truly passed through bankruptcy unaffected, the mortgagees would not have been dragged into the bankruptcy proceeding at all, since they were content to foreclose on their liens. But then how are sections 506(a) and (d)—provisions that apply only to liens, and hurt the lienor—ever brought into play? One possibility is that they are brought into play only when the lienor, wanting to have an unsecured claim against the bankrupt estate to the extent of any difference between the value of his lien and the amount of money owed him by the debtor, has voluntarily filed a claim in bankruptcy. This interpretation, which makes section 506 merely an optional creditor's remedy, is consistent with the notion that liens pass through bankruptcy unaffected, but overlooks the significance of section 506(d) when read together with section 501, which governs proof of claims. Section 501(c) authorizes the debtor as well as the creditor to file a proof of claim, including proof of a secured claim under section 506(a). Such a filing not only drags the secured creditor into the bankruptcy proceeding against his will but brings section 506(d) into play, that is, strips down the lien, even if the lienor would have preferred to bypass the bankruptcy proceeding completely.

823 F.2d at 190–91.

Rather than fully rehash that analysis, which is consistent with a majority of courts deciding this issue, the Court will simply follow the reasoning set forth in that decision, which clearly recognizes the applicability of § 506(d) to mortgage and presumably other liens in a Chapter 7 case. This language implicitly sanctions as a legitimate bankruptcy purpose the avoidance of liens on property abandoned by a trustee in a Chapter 7 case, even when the purpose is to reduce the secured debt to the "new value" of the lien in an effort to redeem or otherwise retain the property for the sole benefit of the Debtor.

An important policy reason for allowing this procedure is set forth in *Matter of Folendore,* 862 F.2d 1537 (11th Cir.1989). In that case, the Small Business Administration held a lien junior to two liens that secured a debt greater than the value of secured property. The court held that the lien was unsecured pursuant to § 506(a). *Id.* at 1538. The court noted that a request under § 506(d)(1) is not merely perfunctory, rather it serves the vital purpose of alerting the bankruptcy court to the existence of a claim of which it might otherwise be unaware due to a lienholder's failure to file a proof of claim. *Id.* at 1538–39 (citation omitted). The § 506(d) request also alerts the court to the possibility that a secured creditor may be waiting until a debtor has been discharged to foreclose its lien and collect a deficiency judgment. *See, Lindsey,* 823 F.2d at 191–192.

In *Folendore,* the court also relies on the plain language of the statute, stating that "[g]iven the plain language of the statute, and the clarifications provided by the 1984 amendments, the SBA's reading of the Committee notes [that a lien is voidable *only when* the claim is unallowable under § 502] is not tenable. Even if its reading were logical, we cannot ignore the statutory language." *Id.* at 1540, citing *I.N.S. v. Cardoza Fonseca,* 480 U.S. 421, 452–53, 107 S.Ct. 1207, 1223–25, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring) ("[I]f the language of the statute is clear, that language must be given effect—at least in absence of a patent absurdity. Judges interpret laws rather than reconstruct legislatures' intentions. Where the language of these laws is clear, we are not free to replace it with unenacted legislative intent.").

The Court agrees that the plain language of § 506(a) and (d) permits the result reached by the majority cases. It is also noteworthy that although the minority and majority cases appear to be at odds on this issue, cases following both views have expressed concern that permitting a debtor in a chapter 7 case to use § 506 as part of a strategy to retain ownership is unfair and

inequitable.[7] But § 506 only determines the status of the secured claim and does not determine the rights of a debtor and its creditors with respect to any disposition of the property. Therefore, where a debtor wants to retain ownership of property in a chapter 7 case, application of § 506 is but one step in what will be at least a two-step process. This first step is limited to determining the status of secured claims and what liens remain on the property. The manner of enforcement of those liens remaining after § 506(d) has been applied is a separate question, and a second step, which turns on applicable state law. The remaining question then is whether the Debtor can retain ownership of the property after the liens have been stripped down.

*Retention of Ownership.*

The purpose of the § 506 valuation here is undeniably the retention of ownership, and the Debtor candidly states that in her complaint. In opposition to the complaint, the defendants argue that redemption of property by a Chapter 7 debtor can only be made pursuant to § 722, relying on *In re Cordes*, 37 B.R. 582 (D.Ca.1984) and *In re Mahaner*, 34 B.R. 308 (W.D.N.Y.1983).

Redemption pursuant to § 722 requires a lump sum payment to the secured creditor. *See, In re Bell*, 700 F.2d 1053 (6th Cir. 1983); *In re Davis*, 20 B.R. 212 (C.D.Ill. 1982); *In re Carroll*, 11 B.R. 725 (9th Cir.1981); *In re Hart*, 8 B.R. 1020 (N.D.N.Y.1981). Apparently the Debtor does not intend to tender a lump sum payment on any claims determined to be secured pursuant to § 506(a). Therefore, the defendants argue that the Debtor's plan must fail. The defendants and the cases upon which they rely ignore the language of § 722, which specifically refers to personalty and does not mention realty.[8] *See, Lyons*, 46 B.R. 604; *Crouch*, 76 B.R. 91; *Gibbs*, 44 B.R. 475.

In *Gibbs*, 44 B.R. 475, the court rejected the defendant's argument as to the applicability of § 722, stating that

[w]hile § 722 is arguably incorporated within § 506(d), it has a completely different thrust. It is obviously a Chapter 7 provision and therefore applies only to Chapter 7 cases and also only to individual debtors on certain types of personal property secured by a certain type of debt. The two provisions are certainly not inconsistent and I don't feel that the arguable redundancy argues in favor of

7. Due to concerns about fairness, some cases following the majority view have done so reluctantly. In *Lyons*, although it followed *Tanner*, the court stated that "it seems manifestly unfair to permit a debtor to retain his house after avoiding liens to the extent that they exceed the value of the collateral." 46 B.R. at 606–07. The court in *Worrell*, which also follows *Tanner*, states that "[t]his is a difficult problem from a policy perspective because of the Court's sense of what is right and equitable. Nevertheless, the bottom line is that this is a question that Congress should address because the Court cannot rewrite this section of the Bankruptcy Code, and the result reached today appears to be the one the Code compels." 67 B.R. at 20.

Courts following the minority view have cited similar reasoning. In *Dewsnup*, the court refuses to follow *Tanner*, citing the preceding quotes from *Lyons* and *Worrell* while ignoring the plain language of § 506 and the rationale which drove the decisions in those cases. 87 B.R. at 676, 683. In *Smith*, the court summarily adopts wholesale the holdings in *Mahaner* and *Maitland*, stating, among other reasons, that it is bad policy to allow a Chapter 7 debtor to achieve a more beneficial result than could be achieved in Chapter 11 or 13, thereby discouraging reorga-

nization. In *Verma*, the bankruptcy court that decided *Tanner*, determined that a debtor may not avoid an IRS tax lien under § 506(d) in a Chapter 7 context. 91 B.R. 17. The court determined that the debtor could not avoid a tax lien on exempt property because, by enacting § 522(c)(2), Congress expressly excepted avoiding statutory tax liens from exemption or fresh start purposes. The court concluded that the debtor had not provided bankruptcy (as opposed to personal) reasons for the avoidance action, thereby violating the policy of § 522(c)(2). A different result was reached in a Chapter 13 case, which held that the IRS was unsecured to the extent that its lien exceeded the value of the property to which the lien attached. *See, Frost*, 19 B.R. 804, *rev'd on other grounds*, 47 B.R. 961.

8. *Collier* interprets § 722 to mean that "[t]he property to be redeemed must be tangible personal property. It cannot be stock certificates or real estate.... thus, the right of redemption [under § 722] is intended for property that constitutes consumer goods." 4 *Collier*, ¶ 722.04 (15th ed. 1979). *Collier* also concludes that this provision applies to property abandoned under § 544. *Id.*

restricting a section which is unambiguous on its face.

*Id.* at 478. *See also, O'Leary,* 75 B.R. at 884.

Thus, the focus on § 722 as a defense to the application of § 506 is misplaced. Reading such a requirement into § 506 would have the effect of expanding the scope of § 722 beyond its terms to include determinations of rights in real property. And a determination as to whether or not the liens may be stripped down does not determine whether the Debtor may retain the property.

The Seventh Circuit also addressed this issue in *Lindsey,* 823 F.2d 189. Commenting on the respective rights of debtors and secured creditors in a thorough analysis of this issue, the court stated:

> ... once the stripdowns were complete and the secured claims allowed in their stripped-down amount, and given that only the two stripped-down creditors were in the picture (for they were senior, and there were not enough assets for junior creditors to get anything), the only thing that remained to do in the bankruptcy proceeding was to discharge the debtors and let the creditors foreclose their stripped-down liens, subject to whatever rights of redemption the debtors might have, under state law, in the foreclosure proceedings ...
>
> The main purpose served by section 506 is to put the secured creditor who chooses to pursue his rights in bankruptcy in the same position that he would occupy if he had decided to bypass bankruptcy.... Section 506 gives him a secured interest *that he can foreclose on* equal to the market value of his interest, and makes him an unsecured creditor *for the rest,* which is all that a judgment creditor is anyway. The statute is not intended to put him in a grossly inferior position to what he would occupy outside bankruptcy, by denying him all rights of foreclosure after the debtor has defaulted and the lien has been written down ...
>
> What the statute does for the debtor (through the interaction of sections 506 and 501) is enable him to precipitate the foreclosure proceedings, which he might want to do, if real estate prices were temporarily depressed, in order to minimize the secured claims and thus increase the amount available for the unsecured creditors. This presupposes a case in which the trustee is standing in the debtor's shoes and representing the unsecured creditors, rather than a case such as this where the debtor is simply trying to shield as much of his property as possible from the only creditors who are pursuing him. Another reason for the debtor's wanting to precipitate foreclosure, however, is fear that a lienor might hang back till the debtor had been discharged and then foreclose and obtain a deficiency judgment. This tactic might impede the debtor's "fresh start"; section 506(d), read together with section 501(c), enables the debtor to scotch the tactic. In either situation, though, all the debtor can do is accelerate the foreclosure; he cannot postpone it, let alone (as the debtors in this case seek to do) prevent it.

*Id.* at 191–92.

Implicitly, this analysis treats valuation under § 506 as a sale in that the market value of the property is determined and the value of the secured claim is set. Upon foreclosure, the secured party is allowed to foreclose its security interest and obtain an amount equal to the market value of its interest. Presumably, any remaining proceeds would belong to the debtor.

The lienholders concede that § 506 contemplates that valuation simulates the result of the sale. Their disagreement with the use of § 506(d) here stems from their belief that where a debtor intends to retain ownership without redeeming its interest, the sale analogy is inappropriate. They assert that this is especially true in a Chapter 7 case because the property may actually be sold after the § 506 hearing when it has appreciated in value. This appreciation would permit all of the current lienholders to participate in the proceeds as secured creditors.

While it may appear unfair to permit the Debtor to retain any surplus from a post-

petition sale, the justification for this result is set forth in *Tanner.* In *Tanner,* the court stated that "assets of the debtor are determined at the time of filing. . . . Property acquired afterward is not subject to claims of pre-petition creditors. Appreciation of property or an increase of equity by reduction of an outstanding mortgage are examples of after-acquired property which are attributable to the debtor's post-bankruptcy efforts. If a real property mortgage is not avoidable to the extent that it is undersecured, a pre-petition creditor will impair the debtor's fresh start by partaking in his post-petition property acquisitions." 14 B.R. at 936.

In light of *Lindsey,* allowing the Debtor to avoid the liens on her interest in the property to the extent that the liens exceed the value of that property does not necessarily work a redemption. *See also, O'Leary,* 75 B.R. at 884. Whether or not the Debtor can redeem or otherwise retain her interest in the property depends on state law applicable to the agreement between the Debtor and whoever emerges as a secured creditor after the § 506(d) hearing.

The foregoing is only intended to resolve the issue of whether § 506 is applicable, and the Court finds and concludes that it is. The remaining issues, as to the extent to which the claims are secured and unsecured and the priorities of the various claims, will be set for further hearing. The Court will also withhold its judgment as to any dischargeability issues in light of the pending complaint to determine dischargeability in a related adversary.

## CONCLUSION

Section 506(d) is applicable to liens on real property in a Chapter 7 case, even where that property has been abandoned and the debtor seeks to retain ownership. The requirements of § 722 do not prevent a debtor in Chapter 7 from stripping down liens on abandoned property and then pursuing its contractual rights or redemption rights under state law. Therefore, the Court concludes that the Debtor may seek valuation of the secured claims and avoid liens on the property to the extent that those liens exceed the value of the Debtor's interest in the property. And summary judgment is appropriate because there is no issue of material fact as to the applicability of § 506(d).

Summary judgment is not appropriate, however, as to the determination of priorities and the extent to which the claims are secured and unsecured because the dates as to the lien of National Ben Franklin Insurance and the mortgage of Lincoln Way Federal Savings and Loan are not ascertainable from the record and pleadings before the Court.

ACCORDINGLY, IT IS ORDERED that the Debtor's motion for summary judgment be and is hereby granted, as to the applicability of § 506.

IT IS FURTHER ORDERED that the Debtor's motion for summary judgment is denied as to the determination of priorities, the status of the secured claims, and the dischargeability of claims.

IT IS FURTHER ORDERED that issues as to disposition of the property, the determination of priorities and the extent to which the claims are secured and unsecured be set for further hearing.