**In re Daniel Russell LEAVELL, Debtor.**

**Daniel Russell LEAVELL, Plaintiff,**

**v.**

**UNITED STATES of America, State of Illinois, Department of Revenue, Defendants.**

**In re William and Charmaine CHENOWETH, Debtors.**

**William and Charmaine CHENOWETH, Plaintiffs,**

**v.**

**WILLIAMSON COUNTY, ILLINOIS, Bruce A. Troutman, as County Treasurer of Williamson County Illinois, Fabick Machinery Co., the United States of America, John W. Kirby, Lauderdale and Decker Insurance Agency, Ltd., a Subsidiary of Consolidated Insurance Agency, Inc., Defendants.**

Bankruptcy Nos. 85–40274, 90–40398.
Adv. Nos. 90–0162, 90–0161.

United States Bankruptcy Court, S.D. Illinois.

March 7, 1991.

**536**

Darrell Dunham, Carbondale, Ill., for Leavell and Chenoweth.

Robert Shaw, Mt. Vernon, Ill., for Fabick Mach.

Douglas Snoeyenbos, U.S. Atty., E. St. Louis, Ill., for U.S., Justice Dept.

Ill. Atty. Gen., for Dept. of Revenue.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

These adversary proceedings present a common issue of whether federal tax liens securing nondischargeable tax debts may be avoided by Chapter 7 debtors pursuant to 11 U.S.C. § 506(d). In each instance, the debtors own real property against which federal tax liens have been filed, and the property is encumbered by a first mortgage which exceeds the value of the property alleged by the debtors. In each instance, the debtors have filed a complaint to avoid liens under § 506(d), by which they seek to avoid the tax liens as unsecured. The United States of America ("defendant") opposes avoidance of its liens, asserting that § 506(d) is not available for use by Chapter 7 debtors to avoid tax liens securing nondischargeable tax debts.

The debtors in each case have filed motions for summary judgment. The defendant responds that summary judgment for the debtors is inappropriate even if the Court finds § 506(d) to be applicable because there are factual issues concerning the value of the debtors' property and the amount of competing liens. The defendant has itself filed motions for "judgment as a matter of law" in each case, seeking dismissal of the debtors' complaints based solely on the inapplicability of § 506(d) to avoid its liens.

### William and Charmaine Chenoweth

Debtors William and Charmaine Chenoweth filed for Chapter 7 bankruptcy relief on March 30, 1990. At the time of filing, the debtors owned real property located in Williamson County, Illinois, which was subject to a first mortgage in favor of the Peoples Bank of Marion. The debtors allege that the property has an outstanding mortgage indebtedness of approximately $65,000 and an appraised value of $55,000.

On November 6, 1989, an assessment was made against the debtors for unpaid federal income taxes for tax year 1984 in

the amount of $84,213.62. Further assessments for tax years 1988 and 1985 followed on December 18, 1989, and January 8, 1990, in the amounts of $8,654.04 and $57,002.68, respectively. Notice and demand for payment was sent to the debtors. On January 18, 1990, and February 9, 1990, the defendant's tax liens were duly filed in the Williamson County recorder's office.

The remaining lien claimants named in the debtors' complaint, with the exception of Fabick Machinery Co. ("Fabick"), failed to respond, and a default judgment has been entered against them. In response to the debtors' request to admit, Fabick stipulated that it has a judgment lien against the debtors in the amount of $37,936.60, plus attorney fees, and that the debtors' property is subject to a prior mortgage which exceeds the value of the real estate. At the time of the debtors' complaint, the trustee had not abandoned the debtors' real estate as property of the estate and had evidenced no intention to do so.

### Daniel Leavell

Debtor Daniel Leavell filed for Chapter 11 bankruptcy relief on July 17, 1985, and, on December 12, 1985, the case was converted to one under Chapter 7. At the time of filing the debtor owned real property located in White County, Illinois, which was subject to a first mortgage in favor of the White County Bank. The debtor alleges that the property has an outstanding mortgage indebtness of approximately $125,000 and an appraised value of $90,000.

On May 6, 1985, an assessment was made against the debtor for unpaid Form 941 taxes for the third quarter of 1984 in the amount of $15,586.18.[1] Interest accrued on this assessment to the petition date of July 17, 1985, in the amount of $2,798.52. On June 17, 1985, an assessment was made for unpaid Form 941 taxes for the fourth quarter of 1984. The principal tax liability was subsequently paid but liability remains for accrued interest to the

petition date in the amount of $1000.20. On June 17, 1985, an additional assessment was made for unpaid Form 941 taxes for the first quarter of 1985 in the amount of $12,549.74. Interest accrued on this assessment to the petition date in the amount of $369.25. Notice and demand for payment was sent to the debtor. On February 7, 1987, after the debtor sought bankruptcy relief and received his Chapter 7 discharge, the defendant filed its notice of federal tax liens in the White County recorder's office.

The only other defendant named in the debtor's complaint, the Illinois Department of Revenue, has elected not to oppose the relief sought by the debtor. The property that is the subject of the debtor's complaint to avoid liens was abandoned by the Chapter 7 trustee on April 26, 1990, prior to the filing of the complaint.

### Section 506(d) Lien Avoidance

 The defendant's argument that the debtors should not be allowed to avoid its tax liens under § 506(d) is two-pronged. The defendant first asserts that the valuation and lien avoidance provisions of § 506 are intended to facilitate the disposition of property in reorganization proceedings (Chapters 11, 12, and 13) and may not be used by Chapter 7 debtors to "strip down" secured liens to the value of the underlying collateral.[2] More specifically, the defendant argues that § 506(d) lien avoidance is inappropriate to tax liens securing nondischargeable tax debts. The defendant observes that, unlike mortgage liens that attach to a specific parcel of property, tax liens attach to "all property" of the debtor, including property acquired postpetition. Since the debtors here will remain liable for their nondischargeable tax debts following discharge, the defendant asserts that avoidance of the tax liens as to the specific property alleged in the debtors' complaints cannot be justified on the basis that it will duplicate the results of a forced sale and afford the debtors a "fresh start." The

---

**1.** Form 941 taxes consist of income and Federal Insurance Contributions Act (FICA) taxes withheld from employees' wages, along with the employer's share of FICA taxes.

**2.** The term "strip down" refers to the process of reducing undersecured liens to the value of the property securing them. *See Matter of Lindsey,* 823 F.2d 189 (7th Cir.1987).

defendant, accordingly, seeks denial of the lien avoidance sought by the debtors because it would benefit neither the debtors nor unsecured creditors.

A split of authority exists concerning the defendant's first argument that § 506(d) is not available to Chapter 7 debtors to avoid the unsecured portion of liens on real property. The debate centers on whether § 506(d) should be applied according to its "plain language" as allowing the avoidance of excess liens by debtors in liquidation proceedings or whether it should be read in a "holistic" context as serving merely to implement Code provisions governing disposition of property in reorganization proceedings. *See In re Israel*, 112 B.R. 481, 484 (Bankr.D.Conn.1990).

Section 506(a) and (d) provide for the definition and treatment of secured claims under the Code:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.
>
> . . . . .
>
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void. . . .

11 U.S.C. § 506(a), (d). Under subsection (a), a previously secured claim is bifurcated so that the claim is secured only to the extent of the value of the property which serves as collateral and the remainder of the claim, up to the amount of the original obligation, is unsecured. Subsection (d) provides that a lien securing a claim "that is not an allowed secured claim" is void,

with exceptions not applicable here. Read together, § 506(a) and (d) allow for the avoidance of liens to the extent they exceed the value of the underlying security.

While nothing in § 506(d) prohibits its use by Chapter 7 debtors or limits its application to property in reorganization proceedings, courts adopting the "holistic," or minority, view hold that § 506(d) is not a stand alone avoidance provision but is, rather, an implementing provision to be used in structuring a plan of reorganization under Chapters 11, 12 and 13. *See In re Dewsnup*, 908 F.2d 588 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 949, 112 L.Ed.2d 1038; *In re Lange*, 120 B.R. 132 (Bankr. 9th Cir.1990). These courts cite the restrictions on lien avoidance in Chapters 11 and 13 (*see* 11 U.S.C. §§ 1111(b)(2), 1322(b)(2)) and assert that Congress, in providing incentives for debtors to choose reorganization rather than liquidation under the Code, could not have intended to allow debtors more in liquidation proceedings than they would receive in a reorganization. *Dewsnup*, 908 F.2d at 592; *Lange*, 120 B.R. at 135–36.[3] The courts further point to the language in § 506(a) referring to "property in which the estate has an interest" as indicating that § 506(d) may not be employed to avoid liens on fully encumbered property that has been abandoned by the trustee and will not be administered by the estate. *Dewsnup*, 908 F.2d at 590–91; *In re Maitland*, 61 B.R. 130, 132–33 (Bankr.E.D.Va.1986).[4]

In contrast to the *Dewsnup* line of cases, which incorporates a policy against lien avoidance to benefit the Chapter 7 debtor, the "plain language" or majority view holds that § 506(d) is available in liquidation proceedings even when the purpose is to avoid excess liens for the debtor's sole benefit. *See In re Gaglia*, 889 F.2d 1304 (3rd Cir.1989); *In re Zlogar*, 101 B.R. 1

---

**3.** The courts also note that the Code's redemption provision (11 U.S.C. § 722) is limited to personal property and assert that if Chapter 7 debtors were allowed to "strip down" liens on real property under § 506(d), they would be able to effectuate a redemption of such property contrary to the limitation of § 722.

**4.** The *Dewsnup* approach is followed even where the debtor's property has not been formally abandoned if the property is overburdened with liens or has inconsequential value and will yield no benefit to the estate. *See Lange; In re Spendio,* 1989 WL 223054 (Bankr. W.D.N.Y.1989); *see also Matter of Hoyt,* 93 B.R. 540 (Bankr.S.D.Iowa 1988).

(Bankr.N.D.Ill.1989); *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Pa.1981); *see also In re Lindsey*, 823 F.2d 189 (7th Cir.1987). By enforcing § 506(d) according to its terms, the majority view enhances the Chapter 7 debtor's "fresh start" following bankruptcy in that the debtor is allowed to avoid liens that exceed the value of the encumbered property and enjoy the benefits of any increased equity or post-petition appreciation. As the *Tanner* court observed, the assets of the debtor are determined at the time of filing bankruptcy, and property acquired after bankruptcy is not subject to the claims of prepetition creditors. Appreciation of property or an increase in equity ownership by the reduction of an outstanding mortgage are examples of after-acquired property which are attributable to the debtor's post-bankruptcy efforts. Thus, "[i]f a real property mortgage is not avoidable to the extent it is undersecured, a pre-petition creditor will impair the debtor's fresh start by partaking in his post-petition property acquisition." 14 B.R. at 936.

This Court's recent decision in *In re Richardson*, 121 B.R. 546 (S.D.Ill.1990) followed the majority view that § 506(d) is available to Chapter 7 debtors to avoid liens for the sole benefit of the debtor. In that case, the subject property had not been abandoned from the estate, and the Court did not specifically address the argument of the minority view that § 506(d) is inapplicable to abandoned property because it is not administered by the estate and so is not "property in which the estate has an interest" under § 506(a). The meaning of this phrase in § 506(a) has been much debated, and courts on both sides of the issue of § 506(d) lien avoidance by Chapter 7 debtors have interpreted it as supporting their positions. *See Dewsnup:* following abandonment, estate no longer has an interest in property that was once property of the estate; *Maitland:* if property has never been property of the estate or has been abandoned, the estate does not have

an interest which would allow for § 506(a) determination; *Gaglia:* legal title to over-encumbered property passes to estate so that estate has an interest in property even where debtor has no equity in it; *In re Kostecky*, 111 B.R. 823 (Bankr.D.Minn. 1990) (citing *In re Gibbs*, 44 B.R. 475 (Bankr.D.Minn.1984): as Chapter 5 provision, § 506 applies in all cases under the Code, and its use in Chapter 7 cases will almost always be by debtors on exempt property or property that is subject to abandonment as lacking in value to the estate; *In re Haugland*, 83 B.R. 648 (Bankr.D.Minn.1988): § 506 applies to property that once was, but no longer is, property of the estate; § 522(c)(2)(A)(ii) explicitly contemplates § 506(d) avoidance of liens against exempt property, and it follows that debtor does not lose right to avoid liens against abandoned property which has likewise been removed as property of the estate.

■ The property against which lien avoidance is sought in the present cases has either been formally abandoned (Leavell) or is encumbered with liens in excess of its value (Chenoweth), and the defendant argues that such property is not subject to § 506(a) determination as "property in which the estate has an interest." Given the ambiguity of this phrase and the conflicting interpretations of its meaning in the context of § 506(d) lien avoidance, the Court finds no basis to alter its previous ruling that § 506(d) is available for the benefit of the Chapter 7 debtor. As in *Richardson*, the Court is persuaded by the reasoning of the majority view, as expressed in the 7th Circuit decision of *Lindsey*, that the Chapter 7 debtor may avoid excess liens under § 506(d) where this will promote the debtor's "fresh start" and allow him to benefit from post-petition property acquisition. Accordingly, the Court rejects the defendant's initial argument that § 506(d) is not applicable in Chapter 7 proceedings to "strip down" liens on over-encumbered real property.[5]

5. The Court finds no merit in the defendant's related argument that it lacks subject matter jurisdiction to make determinations concerning

liens on the debtor's property once it is abandoned and is no longer property of the estate. *But see In re Israel*, 112 B.R. at 483. Determina-

## Tax Liens Securing Nondischargeable Debts

The defendant argues further that notwithstanding the availability of § 506(d) in Chapter 7 proceedings to avoid liens generally, this provision is not applicable in the specific instance of tax liens securing nondischargeable debts. It is uncontested that the tax debts at issue are nondischargeable as having been assessed within 240 days of the debtors' bankruptcy filings. *See* 11 U.S.C. §§ 523(a)(1)(A), 507(a)(7)(A)(ii). The assessments in the Leavell case also included income and FICA taxes withheld from employees' wages, which are nondischargeable as so-called "trust fund" taxes. *See* 11 U.S.C. §§ 523(a)(1)(A), 507(a)(7)(C).

The defendant's argument, based upon the distinction between dischargeable and nondischargeable tax debts as well as the liens securing them, requires analysis of the nature and effect of tax liens both prior to and following bankruptcy. Under § 6321 of the Internal Revenue Code (I.R.C.) (26 U.S.C. § 6321), notice of assessment for unpaid tax liabilities creates a lien on all property of the taxpayer, both real and personal. This lien, which is perfected as to other creditors by filing, attaches to all property interests of the taxpayer, including interests acquired after the date of the lien. *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); *Rice Investment Co. v. United States*, 625 F.2d 565 (5th Cir.1980).

Once the taxpayer files for bankruptcy and receives a discharge, he is relieved of personal liability for dischargeable tax debts. The debtor's discharge does not automatically invalidate tax liens securing dischargeable debts, and these liens continue beyond bankruptcy as a charge upon the debtor's property if not disallowed or avoided. *In re Leslie*, 103 B.R. 775 (Bankr.S.D.W.Va.1989); *see In re Dillard*, 118 B.R. 89 (Bankr.N.D.Ill.1990).[6] Tax liens securing dischargeable debts, however, do not attach to the debtor's post-petition after-acquired property. *See United States v. Sanabria*, 424 F.2d 1121 (7th Cir.1970); *In re Braund*, 423 F.2d 718 (9th Cir.1970), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51.

Unlike liens securing dischargeable debts, which survive bankruptcy only as to the debtor's prepetition property, liens securing nondischargeable debts attach to the debtor's postpetition or after-acquired property. *See In re Wukelic*, 544 F.2d 285 (6th Cir.1976); *In re Frengel*, 115 B.R. 569 (Bankr.N.D.Ohio 1989). Thus, the bankruptcy discharge neither relieves the debtor of personal liability for these debts nor affects tax liens securing the debts, which continue to attach to property interests acquired by the debtor pursuant to I.R.C. § 6321.[7]

Because of the debtors' continued liability for the tax debts here and the viability of the tax liens as to property acquired after bankruptcy, the defendant asserts that avoidance of the tax liens pursuant to

---

tion of the validity and extent of liens is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and the relief sought in these matters deals directly with the adjustment of the debtor-creditor relationship (*see* 28 U.S.C. § 157(b)(2)(0)) insofar as it affects the debtors' obligations following bankruptcy and their consequent right to a "fresh start." *Cf. In re Jackson*, 102 B.R. 82 (Bankr.N.D.Tex.1988): bankruptcy court has jurisdiction to determine extent and validity of liens on homestead property that has been claimed as exempt and is no longer property of the estate.

**6.** Section 522(c)(2)(B) specifically provides that the debtor's exempt property remains subject to debts secured by a properly filed tax lien. 11 U.S.C. § 522(c)(2)(B). Thus, even if a tax debt

is dischargeable vis-a-vis the debtor's after-acquired assets, it is still collectible from otherwise exempt property if secured by a perfected tax lien.

**7.** The Court's discussion in this regard is limited to proceedings under Chapter 7, as the treatment of nondischargeable or priority tax claims varies under other chapters of the Code. In Chapter 13 proceedings, for example, the government is entitled to receive the value of its secured claim under the debtor's plan, as well as its full unsecured priority claim, but the Chapter 13 discharge is effective even as to nondischargeable tax debts upon completion of the plan. *See In re Frost*, 19 B.R. 804 (Bankr.D.Kan. 1982), *rev'd on other grounds*, 47 B.R. 961 (D.Kan.1985).

§ 506(d) would have·no effect and should be denied. The Court agrees. Avoidance of the defendant's tax liens in this instance would be a nugatory act, as the defendant would have the right in any event to reduce the debtors' tax assessments to judgment and foreclose against the debtors' property following termination of the automatic stay. Moreover, since the tax liens attach to all property of the debtors, including property acquired after bankruptcy, voiding the tax liens would not duplicate the results of a forced sale as in the *Gaglia, Lindsey* and *Tanner* cases, in which mortgage liens were avoided against particular property. The rationale of these cases that § 506(d) lien avoidance allows the Chapter 7 debtor to enjoy the benefit of property appreciation or increased equity attributable to his postbankruptcy efforts is likewise not applicable to this situation of tax liens securing nondischargeable debts, because the debtors have not been relieved of their personal liability for such debts, and the tax liens will properly attach to property interests acquired after bankruptcy.

No reason has been advanced, nor is one apparent, for the relief requested by the debtors here. The Court, finding that avoidance of the defendant's tax liens would effectuate no Code policy, holds that § 506(d) is not applicable in Chapter 7 proceedings to avoid tax liens securing nondischargeable tax debts.

While there are few decisions specifically addressing the issue of § 506(d) avoidance of tax liens, the Court finds support for its ruling in the case of *In re Frengel,* in which the court distinguished between tax liens securing both dischargeable and nondischargeable debts and found § 506(d) to be inapplicable to avoid the liens securing nondischargeable tax debts. The *Frengel* court noted that the government would still have the right to proceed against the debtor even if the debtor's lien avoidance re-

quest were granted and concluded that Congress did not intend such a result "in providing for the survival of statutory liens post-bankruptcy." 115 B.R. at 571.[8] Other cases have allowed avoidance of tax liens securing dischargeable debts, but are unclear on the issue of whether liens securing nondischargeable tax debts may be avoided. *See In re Crawford,* 115 B.R. 381 (Bankr.N.D.Ga.1990); *In re Zlogar,* 101 B.R. 1 (Bankr.N.D.Ill.1989). In *Zlogar,* the court observed that the IRS and the Illinois Department of Revenue opposed avoidance of their liens "[even though neither ... assert[ed] that the debtor's tax obligations [were] nondischargeable" (101 B.R. at 3), thereby indicating that a different result might obtain if the tax debts were nondischargeable. The *Crawford* case involved both dischargeable and nondischargeable tax debts, and the court's order did not specify the particular lien or liens avoided.

For the reasons stated, the Court finds that debtors William and Charmaine Chenoweth and debtor Daniel Leavell may not avoid the federal tax liens against their property under § 506(d) as requested in their complaints. The Court, accordingly, denies the debtors' motions for summary judgment as to the defendant, United States of America, and grants the defendant's motions for judgment as a matter of law against the debtors. The Court further finds that the lien of defendant Fabick in the Chenoweth case and the lien of the defendant Illinois Department of Revenue in the Leavell case may be avoided as unsecured pursuant to § 506(d). The Court, accordingly, enters summary judgment for the debtors in each case as to these defendants.

---

8. The defendant also cites the recent case of *In re McCullough,* 122 B.R. 251 (Bankr.W.D.Pa. 1990), in which Judge Cosetti, who authored the *Tanner* decision relied on by courts allowing § 506(d) lien avoidance in Chapter 7 cases, ruled that tax liens cannot be avoided under § 506(d). While not expressly stated, it appears that the debtors in *McCullough* were attempting to avoid tax liens as to exempt property. Judge Cosetti's ruling was based on § 522(c)(2)(B), which prohibits the avoidance of tax liens generally against exempt property. Therefore, the *McCullough* decision is not apposite to the issue here of avoidance of tax liens against the debtors' nonexempt property.