In re Sally E. ZOBENICA and Dushan J. Zobenica, Debtors.

Bankruptcy No. 89–23057–B.

United States Bankruptcy Court, W.D. Tennessee, W.D.

Jan. 30, 1990.

George D. McCrary, Bartlett, Tenn., for Bank of Bartlett and Small Business Admin.

Edward L. Montedonico, Richard T. Doughtie, III, Freeman C. Marr, A.J. Calhoun, Memphis, Tenn., William Guy, Michael Tabor, Jackson, Tenn., Chapter 7 Trustee.

George W. Emerson, George W. Stevenson, Memphis, Tenn., Chapter 7 and 13 Trustee.

Ernie Gray, Jackson, Tenn., Chapter 13 Trustee.

U.S. Trustee, Memphis, Tenn.

## MEMORANDUM OPINION AND ORDER ON CREDITOR'S MOTION FOR RELIEF FROM STAY AND DEBTORS' RESPONSE THERETO PURSUANT TO 11 U.S.C. § 506

WILLIAM H. BROWN, Bankruptcy Judge.

This core proceeding[1] is before the Court on the joint motion of the Small Business Administration and the Bank of Bartlett for relief from the automatic stay and the debtors' response thereto, which raises the issue whether the Chapter 7 debtors may use § 506 of the Bankruptcy Code to avoid liens on their real estate to the extent the creditors are undersecured. If so, the Court must determine the secured property's value. The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The record reflects that the debtors filed their voluntary, joint petition for relief under Chapter 7 of the Bankruptcy Code on April 26, 1989. Among their assets is their residence and 11 acres located in Brighton, Tennessee. Mrs. Zobenica testified that the debtors purchased this property in 1975. It is uncontroverted that the first mortgage is held by Banc Boston Mortgage Company as security for its claim of $46,-607.37. On November 16, 1988, the debtors obtained a loan of $70,000.00 from the Bank of Bartlett (hereinafter Bank) for their former business, Paywrite Systems, Inc. (Trial Ex. 1). Sixty percent of this

Norman Hagemeyer, Memphis, Tenn., for debtors.

---

1. 28 U.S.C. § 157(b)(2)(B), (G), and (K).

loan amount was guaranteed by the Small Business Administration (hereinafter SBA). (Trial Ex. 1) The debtors granted the Bank and SBA a second mortgage on their real property as part of their guaranty for the loan. (Trial Ex. 1) The parties have stipulated that the amount due the Bank and SBA is $71,000.00.

Shortly after commencement of this case, the Bank and SBA filed a Motion for Relief from the Automatic Stay imposed by 11 U.S.C. § 362(a) in order that they might be allowed to foreclose on the property pursuant to the guaranty and second mortgage. The debtors filed a written response to the motion asserting that the relief sought by the creditors should be denied because under § 506(d) of the Bankruptcy Code, the debtors may avoid the second mortgage to the extent that it is unsecured. It is essentially the debtors' position that by its terms, § 506 authorizes avoidance of the mortgage held by the Bank and SBA to the extent that its amount exceeds the value of the property above the first mortgage. Their purpose in asserting this position is to retain the property by paying these creditors the value of any equity above the first mortgage in satisfaction of their secured claims, thereafter maintaining contractual payments to the first mortgage holder. The debtors testified that friends would loan them the amount needed to pay the second mortgage secured claim.

The Bank and SBA contend that to allow avoidance of its lien in these circumstances would permit the debtors to obtain more relief in Chapter 7 than in Chapter 13 because § 1322(b)(2) of the Code prohibits the modification of a claim secured only by real estate that is a debtors' residence. Further, according to these creditors, although this property has not been formally abandoned by the Chapter 7 trustee, this is a no asset case; as such, the property is not property of the estate and § 506(a) and (d) are not applicable. Moreover, these debtors failed to make a statement of their intent to redeem this property as required by § 521(2)(A). Finally, according to these creditors, it may be detrimental to the debtors for this Court to set a value on the property. The argument is that fore-closure would be a better alternative to the debtors because the bid would equal the true value.

In contrast, the debtors argue that these creditors should only receive as secured creditors the present value of the real property. The creditors, it is argued, should not benefit from any long term appreciation of the property, and they would not be expected to wait for appreciation. Rather, it is assumed by the debtors that these creditors would foreclose as they have moved for relief to do.

■ It is noted at the outset that the proper procedure for challenging the validity, priority, or extent of the lien is by the filing of an adversary proceeding pursuant to Bankruptcy Rule 7001(2). *See, e.g., In re Zlogar,* 101 B.R. 1 (Bankr.N.D.Ill.1989). Clearly, the debtors here seek a determination of the extent of the creditors' lien and as such, this issue should have been litigated as an adversary proceeding. However, although the creditors raised this issue in closing arguments, they vigorously opposed the debtors' position by litigating the § 506 issue and treating the debtors' response as a motion for valuation. Thus, in this particular case, the Court is not precluded from reaching the merits by this "procedural defect." *See, In re Jablonski,* 70 B.R. 381, 385 (Bankr.E.D.Pa.1987), *aff'd.* 88 B.R. 652 (E.D.Pa.1988).

■ Turning to the issue at bar, § 506(a) and (d) of the Bankruptcy Code provide:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) [an unmatured claim for alimony, maintenance, or support] or 502(e) [co-debtor claims] of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim under Section 501 of this title.

It is well settled that the effect of § 506(a) is to bifurcate "a secured creditor's claim into a secured and unsecured component, with the claim secured to the extent that the creditor may look to the underlying collateral." *Gaglia v. First Federal Savings & Loan Association, et al.,* 889 F.2d 1304, 1306 (3rd Cir.1989). According to the United States Supreme Court,

> Subsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured.[3]

---

[3] Thus, a $100,000 claim secured by a lien on property of a value of $60,000.00 is considered to be a secured claim to the extent of $60,000.00 and to be an unsecured claim for $40,000.00. See 3 Collier on Bankruptcy ¶ 506.04, p. 506–15 (15th Ed.1988) ("section 506(a) requires a bifurcation of a 'partially secured' or 'undersecured' claim into separate and independent secured claim and unsecured claim components.")

*U.S. v. Ron Pair Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989).

Given this rule, the majority of courts considering the instant issue have concluded that § 506(d) may be used to avoid the unsecured portion of a lien deemed unsecured by the effect of § 506(a). Moreover, this majority conclusion has been reached in the Chapter 7 context in reliance primarily on the plain meaning of the statute. *See, e.g., Gaglia v. First Federal Savings & Loan Association, supra; In re Lindsey,* 823 F.2d 189 (7th Cir.1987); *In re Folendore,* 862 F.2d 1537 (11th Cir.1989); *In re Garnett,* 88 B.R. 123 (Bankr.W.D.Ky. 1988) *aff'd,* 99 B.R. 757 (W.D.Ky.1989); *In re Zlogar,* 101 B.R. 1 (Bankr.N.D.Ill.1989); *In re O'Leary,* 75 B.R. 881 (Bankr.D.Or. 1987); *In re Worrell,* 67 B.R. 16 (Bankr.C. D.Ill.1986); *In re Cleveringa,* 52 B.R. 56 (Bankr.N.D. Iowa 1985); *In re Lyons,* 46 B.R. 604 (Bankr.N.D.Ill.1985); *In re Hunter,* 101 B.R. 294 (Bankr.S.D.Ala.1989); *In re Gibbs,* 44 B.R. 475 (Bankr.D.Minn.1984); *In re Brace,* 33 B.R. 91 (Bankr.S.D. Ohio 1983); *In re Tanner,* 14 B.R. 933 (Bankr. W.D.Pa.1981).

Contrasting this majority view is a strong minority which suggests that "there are persuasive arguments on both sides of the issue." *In re Zlogar,* 101 B.R. at 5. The *Zlogar* Court summarized the minority views as holding that § 506 should not be available to a Chapter 7 debtor because: "(a) real property is not included in § 722; (b) this practice would create bad policy by discouraging reorganization; and (c) this would permit unconstitutional takings of property." 101 B.R. at 4. *See also* minority rationale summarized 101 B.R. at 5. *See, e.g., In re Dewsnup,* 87 B.R. 676 (Bankr.D. Utah 1988); *In re Maitland,* 61 B.R. 130 (Bankr.E.D.Va.1986); *In re Smith,* 79 B.R. 650 (Bankr.D.Md.1987); *In re Larson,* 99 B.R. 1 (Bankr.D. Alaska 1989); *In re Hoyt,* 93 B.R. 540 (Bankr.S.D. Iowa 1988); *In re Mahaner,* 34 B.R. 308 (Bankr.W.D.N.Y.1983).

After analysis of cases on both sides of the issue, this Court believes that the better view is that § 506(a) and (d) are available in Chapter 7 for the avoidance of the unsecured portion of an undersecured claim, and the Court will address the arguments of these affected creditors to the contrary.

The creditors here assert that to allow this result in Chapter 7 cases would effect greater relief for Chapter 7 debtors than for those choosing to participate in a Chapter 13 repayment plan. This is so according to the creditors because § 1322(b)(2) provides that a Chapter 13 plan may not "modify the rights of holders of secured claims" that are "secured only by a security interest in real property that is the debtor's principal residence." The Court agrees that this section prohibits a

Chapter 13 plan from modifying the rights of a holder of only a home mortgage. However, § 103(a) of the Bankruptcy Code renders § 506 applicable in Chapter 13 cases. While the Court does not have to specifically decide the availability of § 506's strip down provisions in a Chapter 13 plan, compelling arguments have been made that lien avoidance *may* be available to Chapter 13 debtors as well as Chapter 7 debtors pursuant to that Code section. *See, e.g., In re Garnett,* 88 B.R. at 126; *In re Zlogar,* 101 B.R. at 6. In fact, it has been expressly held by some courts that a Chapter 13 debtor may bifurcate an undersecured claim and void the lien to the extent the claim is unsecured. *In re Hougland,* 886 F.2d 1182 (9th Cir.1989); *In re Lewis,* 875 F.2d 53, 56 (3rd Cir.1989); *In re Jablonski,* 70 B.R. 381, 386 (Bankr.E.D.Pa. 1987), *aff'd,* 88 B.R. 652 (E.D.Pa.1988); *In re Bruce,* 40 B.R. 884 (Bankr.W.D.Va. 1984). *See also* discussion at *In re Garnett,* 88 B.R. at 1276. As the *Hougland* Court concluded:

> "Congress quite plainly has provided for the separation of undersecured claims into two components—a secured component and an unsecured component. It has then provided for their treatment in Chapter 13 proceedings. The secured portion has special protection when residential real estate lending is involved. The unsecured portion does not."

886 F.2d 1185. *See also In re Gaglia v. First Federal Savings & Loan Association,* 889 F.2d at 1311.

The Court is not persuaded that the availability of § 506(a) and (d) in Chapter 7 cases will necessarily result in greater relief for such debtors than those in Chapter 13 cases. Further support for this conclusion is found in the *O'Leary* case where the Bankruptcy Court opined:

> This argument looks at lien avoidance as if it existed in a vacuum. Lien avoidance is only one of a myriad of factors a debtor may consider when choosing be-

tween bankruptcy chapters. Each chapter contains its own special inducements and restrictions ... "If § 506(d) is one of those provisions that makes Chapter 7 attractive for individual debtors, that is a decision that Congress has made and it is something for Congress to change if it sees fit."

75 B.R. at 884, quoting *In re Gibbs,* 44 B.R. at 479. *See* also, *In re Zlogar,* 101 B.R. at 6.[2] As the Third Circuit recently observed:

> Congress was surely aware that some estates would contain overencumbered property with nothing available for unsecured creditors. It certainly realized that in many such cases the trustee might decide not to liquidate the property. Yet Congress did not limit § 506 to cases in which it aids the administration of the estate ... This indicates to us that § 506 was intended not only to protect creditors, but is also available as a debtors remedy.

*Gaglia v. First Federal Savings & Loan Association,* 889 F.2d at 1309.

◼ The creditors next contend that § 506(a) is not applicable in this case because that section is only applicable to "property in which the estate has an interest" [11 U.S.C. § 506(a) ] and the estate has no interest in the property at issue here because this is a "no asset" case. This argument is clearly contrary to the language of § 541(a)(1) which provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate. "This includes the legal title to property secured by a mortgage. *See,* ... § 541(d)." *Gaglia v. First Federal Savings & Loan Association,* 889 F.2d at 1308. Here, the estate is still open, with no abandonment by the trustee. *See* 11 U.S.C. § 554(c) and *In re Zlogar,* 101 B.R. at 3, n. 3 (Abandonment, if not previously ordered, occurs when the case is closed with a failure of the trustee to administer scheduled

---

**2.** *Zlogar* reached this conclusion after considering the effect of § 1111(b)(2) in Chapter 11 as

well as § 1322(b)(2) in Chapter 13. *See also*

assets).[3] *Compare, In re Shrum,* 98 B.R. 995, 1000 (Bankr.W.D.Okla.1989) (*en banc* court noting that property is no longer property of the estate when exempted or abandoned). Consequently, even though the debtors have no equity in the property and the trustee has filed a "no distribution" report to creditors, the bankruptcy estate has an interest in the property. As the *Zlogar* Court noted, "[s]ection 506 does not address the nature of property as property of the estate, but rather provides a jurisdictional basis for the court to determine the status of secured claims." 101 B.R. at 4, n. 5.

The Bank and SBA also assert that § 506(a) and (d) are not applicable to this case because the debtors failed to state their intention to retain the property on their schedules or prior to the § 341 meeting as required by § 521(2)(A). Indeed, the file contains no "statement of intention" respecting this property other than the written response to the creditors' motion to lift the stay. Section 521 of the Bankruptcy Code sets forth the "Debtors duties" and is applicable to debtors in Chapters 7, 11, 12 and 13. 11 U.S.C. § 103(a). In pertinent part, it provides:

The debtor shall— ...

(2) if an individual debtor's schedules of assets and liabilities includes *consumer debts* which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, *the debtor shall file with the Clerk a statement of his intention with respect to the retention or surrender of such property* and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

*Gaglia v. First Federal Savings & Loan Association,* 889 F.2d at 1311.

(B) within 45 days after the filing of a notice of intent ..., the debtor shall perform his intention with respect to such property ...; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's ... rights with regard to such property under this title.

(Emphasis added.)

From this language, it is clear that the debtor is required to file a statement of intention, but only as to "consumer debts which are secured by property of the estate." Thus, the threshold issue is whether the home mortgage here is a "consumer debt." Section 101(7) defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." This definition has been interpreted to require a determination of the "purpose" of the debt. *In re Kelly,* 841 F.2d 908 (9th Cir.1988). The uncontroverted evidence here is that the debt to the Bank and SBA was incurred for operation of the debtors' now failed business. The second mortgage was granted as additional security for this business loan. (See Trial Ex. 1) As such, this is a commercial rather than a consumer debt for purposes of the Bankruptcy Code. *See, e.g., In re Fox,* 725 F.2d 661 (11th Cir.1984). Even if this were not the case, however, subsection (2)(C) of § 521 (quoted above) states in no uncertain terms that nothing in subsections (A) and (B) "shall alter the debtor's rights with regard to such property under this title." Consequently, if § 506 gives the debtor the "right" to strip down or avoid the unsecured portion of a home mortgage, § 521(2)(A) is apparently not intended to interfere with that right.

Finally, the Bank and SBA contend that § 506(a) and (d) should not be used in this case to allow the debtors to avoid the unsecured portion of their claim because this would entail the establishment of a value on the property by this Court which may be detrimental to the debtors because foreclosure would result in the actual value

**3.** The Court notes that after this decision the real property will still be property of the estate until abandoned.

being paid for the property. This concern has been raised by creditors in several of the cases where the issue was application of § 506. *See, e.g., In re Folendore, supra; In re Tanner, supra; Gaglia v. First Federal Savings & Loan Association, supra.* Each of these cases resulted in resolution of the concern in favor of allowing the court to value the property pursuant to § 506. Valuation in this context is no more difficult for the bankruptcy court than any other valuation. *See, Gaglia v. First Federal Savings & Loan Association,* 889 F.2d at 1308 n. 6. Particularly persuasive is the following language by the *Gaglia* Court:

> If the bankruptcy court improperly values the property, the creditor may not get what he would in liquidation. This risk, however, occurs in other contexts in which a court is required to make a valuation. Indeed, when § 506 is applied, a secured creditor is disadvantaged if the bankruptcy court undervalues the property. The law generally assumes that these valuations are reasonable approximations of the market and we shall do likewise.
>
> Of course, applying § 506 here denies the creditor any increase in the value of the property. However, he would not receive that increase if the property were liquidated. *See, In re Tanner,* 14 B.R. 933, 937 (Bankr.W.D.Pa.1981). ("At a forced sale the Debtor does not retain title to the property and the overvalued lien holder would not gain from future appreciation or increases in equity.")

889 F.2d at 1308, n. 6.

As to an argument that use of § 506 permits an unconstitutional taking of the creditor's property, this could only be argued as to the creditor's "expectancy interest based upon anticipated appreciation or increase" in value, which of course would be "extinguished in a foreclosure proceeding." *In re Zlogar,* 101 B.R. at 6, quoting *In re Tanner,* 14 B.R. 933, 938 (Bankr.W.D.Pa.1981). These creditors before this Court did not raise this argument, and as noted, no proof was put forward that the creditors expected to do anything other than foreclose on the property. In view of the fact that these creditors hold only a second mortgage, that choice is not surprising.

In summary, there appears no substantial reason why this Court should not set a value on the property here pursuant to § 506. As will be shown, there is no evidence that the Bank and SBA will be any worse off than if the property were sold at foreclosure. *Gaglia v. First Federal Savings & Loan Association,* 889 F.2d at 1308; *see also, In re Zlogar,* 101 B.R. at 9–10; *In re Garnett,* 88 B.R. at 125. Also, the use of § 506 does not permit a Chapter 7 debtor to reap a windfall. "It simply permits [these] debtors to repurchase an equity interest in the property." *In re Folendore,* 862 F.2d at 1540.

Mrs. Zobenica testified at the hearing on this matter that she believed the property to be worth $51,000.00 to $53,000.00. Mr. Zobenica testified that he believed the value to be $50,000.00 to $52,000.00. Mr. Billy K. Wilson, a realtor and appraiser, testified on behalf of the debtors that, in his opinion, the property is worth $55,000.00. Mr. Frank Phillips, a certified real estate appraiser, testified on behalf of the creditors that the property's value is $56,500.00, in his opinion. The testimony by both experts was accompanied by their written appraisals which were submitted as trial exhibits 3 and 5. Both appraisals reflect diligent inspections of the subject property. However, Mr. Wilson's appraisal lacks any listing of recent "comparable" sales near the property's location although Mr. Wilson testified that he considered other sales when forming his opinion of the property's value. Notwithstanding the close proximity of the dollar amount of the values arrived at by these appraisers, the Court finds the recent comparable sales listed on Mr. Phillips' appraisal most persuasive. Each sale was closed after June first of 1989 and appears to be a good indication of property values near the debtors' property location. Therefore, the Court chooses to rely on the appraisal of Mr. Phillips and finds the property to be worth $56,500.00. Mr. Phillips was the creditor's witness and it must be presumed that the creditors would not expect to bid more than $56,500.00 at a foreclosure sale.

No contrary proof was elicited. Consequently, the debtors may avoid the mortgage of the Bank and SBA to the extent that it exceeds this value.

In reaching its conclusion, the Court notes that this furthers the Bankruptcy Code's policy of providing the debtors with a fresh start as well as enforces the plain language of § 506. *In re Folendore,* 862 F.2d at 1540; *In re Lindsey,* 823 F.2d at 192; *Gaglia v. First Federal Savings & Loan Association,* 889 F.2d at 1309. Also, if § 506 is available in Chapter 7 for other valuation purposes, this Court can find no policy or other reason to justify excluding the debtors from its use in the present context.

 The debtors testified that they intend to borrow from friends "whatever is needed" to pay the Bank and SBA after which they intend to maintain their regular monthly payments on the first mortgage. These debtors are not attempting to strip down the loan to present value and then restructure a monthly payment. Such an effort would offend the concept of consensual reaffirmation under § 524(c). *See, In re Bell,* 700 F.2d 1053, 1056 (6th Cir.1983) ("[A]uthorization of installment redemption would interpose into Chapter 7 a procedure which Chapter 7 is ill-equipped to implement."). Further, these debtors are in default to the second mortgage holders. The Court recognizes that there is no Bankruptcy Code authorization for redemption of realty. *Compare* § 722 (permitting redemption at the "amount of the allowed secured claim" on *personal* property only). Section 506 is not a redemption statute. *In re Garnett,* 88 B.R. at 125; *Gaglia v. First Federal Savings & Loan Association,* 889 F.2d at 1310. The strip down provisions of § 506 merely put the parties in the same position they would be in the event of liquidation, leaving these creditors with no more or less expectation for recovery than they would enjoy at foreclosure.

 By permitting the debtors to pay cash for that liquidation value, these creditors are actually saving the expense of foreclosure. Both the Code provisions of § 506 and equity are well served by allowing a cash payment to the secured creditors. And, this Court is merely putting the

parties in the position they would be under applicable state law on redemption. *See, In re Zlogar,* 101 B.R. at 9, citing *In re Lindsey,* 823 F.2d at 189. Tennessee Code Annotated 66–6–101, *et seq.* permits a debtor to redeem mortgaged property for two years after foreclosure unless such redemption is waived. These debtors waived their "equity or right of redemption" in the deed of trust (Trial Ex. 1); however, that does not preclude satisfaction prior to foreclosure by payment of the full secured debt. "The mortgagor must be allowed a reasonable time in which to pay the complainant's demand in order to prevent a sale. (citations omitted) Where a tender is made after default, but before the mortgagee has exercised his option, the mortgagee is bound to accept the money." 19 TENN.JURIS., "Mortgages and Deeds of Trust." § 46 (1985), citing *e.g., Overholt v. Merchants & Planters Bank,* 637 S.W.2d 463 (Tenn.App.1982). This deed of trust refers to default causing "the entire indebtedness hereby secured" to become due. (Trial Ex. 1, ¶ 4) This Court is merely finding that the total debt secured is the present market value less the first mortgage balance and that is consistent with the deed of trust language. These creditors may not boost their secured debt beyond what is an allowable secured claim in bankruptcy.

In light of the above findings and conclusions and the debtors' stated intentions, they are instructed to pay the Bank and SBA the difference between the first mortgage balance of $46,607.37 and the value of $56,500.00 on or before thirty (30) days following entry of this order. Failing this, the Bank and SBA may be allowed to commence foreclosure proceedings without further order of this Court.

Additionally, the Court notes that there is presently pending a complaint filed against these debtors by the Bank and SBA whereby the creditors object to the debtors' discharges and seek a determination of the dischargeability of their debt. Resolution of this § 506 issue is by no means intended to affect the outcome of that adversary proceeding and any ruling thereon is reserved pending presentation of the necessary proof and arguments. However, the

822

Court observes that a judgment in favor of the creditors could subject the real property to potential judgment liens.

From the above, it is hereby ORDERED that:

1. The motion of the Bank of Bartlett and the Small Business Administration for relief from the stay is conditionally DENIED;

2. The motion of the debtors for application of 11 U.S.C. § 506(a) and (d) to avoid the undersecured portion of the creditors' claim is GRANTED;

3. The value of the debtors' property is found to be $56,500.00;

4. The debtors are to pay to the Bank of Bartlett and the Small Business Administration the difference in the amount of the first mortgage balance of $46,607.37 and the property's value of $56,500.00 on or before thirty (30) days following entry of this Order;

5. If such payment is not made in accordance with this Order, the Bank of Bartlett and Small Business Administration may commence foreclosure proceedings without further application to or order from this Court.

SO ORDERED.