**In re Ernest WEISBERGER, Debtor.**

**Ernest WEISBERGER, Plaintiff,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. 5–93–01897.
Adversary No. 5–95–00397A.

United States Bankruptcy Court,
M.D. Pennsylvania.

March 17, 1997.

Joseph G. Murray, Wilkes–Barre, PA, David Harris, Wilkes–Barre, PA, for Debtor/Plaintiff.

Angelo Frattarelli, U.S. Dept. of Justice, Washington, DC, for Defendant.

John Martin, Trustee in Bankruptcy, Honesdale, PA.

## OPINION AND ORDER [1]

JOHN J. THOMAS, Bankruptcy Judge.

Before the Court is a Complaint of the Plaintiff, Ernest Weisberger, hereinafter "Plaintiff," against the United States of America, Internal Revenue Service, hereinafter "Defendant," seeking damages, both compensatory and punitive, together with attorneys' fees and interest, based upon alleged violations by Defendant under 11 U.S.C. § 362, 26 U.S.C. § 6331 and 26 U.S.C. § 7426.

Between the entry of discharge and the closing of the case, the Defendant executed upon certain securities of the Plaintiff, including, but not limited to, the loan value on a certain life insurance policy held by Metropolitan Life Insurance Company, Policy No. 013668343A, the interest on State of Israel bonds held by the Chase Manhattan Bank at account no. 95072095501126211, and certain government securities registered and held as joint tenants with State Street Securities Research, Boston, Massachusetts, account no. 4269452–6. Those securities had a value of Forty–Seven Thousand Two Hundred Thirty–Six and 75/100 Dollars ($47,236.75) at the time of the levy. The Plaintiff further alleges that the Defendant was notified that the Plaintiff was still in bankruptcy at the time of the levies and that the Defendant refused to stop the proceedings leading up to the levies and/or return those securities and other assets subject to the levy. The Plaintiff's position is that this action was a violation of Section 362 of the United States Bankruptcy Code and certain provisions of Title 26 of the Internal Revenue Code.

The Defendant responds that the Chapter 7 trustee abandoned all of the levied assets from the estate to the Plaintiff by filing a no asset report and, therefore, these assets were not property of the bankruptcy estate subject to the automatic stay at the time of levy. Additionally, it argues that certain of the assets, namely the government securities registered in the name of State Street Securities Research, were held only by the Plaintiff's spouse and that any cause of action as

1. Drafted with the assistance of Richard P. Rogers, Law Clerk.

to a wrongful levy was the spouse's only, with jurisdiction vested in the district court under 26 U.S.C. § 7433.

The parties did not dispute that the Metropolitan Life Insurance policy and the State of Israel bonds were solely in the name of the Plaintiff at the time of the levy. They did, however, question the respective ownership position of the Plaintiff and his spouse in the State Street Research Government Income or the State Street Research stock at the time of the levy.

The Plaintiff indicated, through counsel, that First Eastern Bank assigned its security interest to the Plaintiff's wife who, at that point, became a lienholder of the stock owned by the Plaintiff. (Transcript of 12/5/95 at 32.) Plaintiff's counsel alternatively argued that the Bank conveyed the stock to Mrs. Weisberger who, in turn, conveyed it to both herself and her Plaintiff/husband. (Transcript, *supra*, at 34.) Continuing this odyssey, the Plaintiff, through counsel, contended that First Eastern Bank never was the record owner of the stock but that the stock was correctly listed on the schedules as owned singularly by the Plaintiff who then transferred it from his name into both his name and his wife's name. (Transcript, *supra*, at 36.) In that respect, the Plaintiff maintains that he was always an owner of the stock in question. Plaintiff's counsel indicated that Mrs. Weisberger exchanged her secured position for co-ownership in the stock. (Transcript, *supra*, at 37.) On October 28, 1993, the Plaintiff filed the instant bankruptcy case under Chapter 7 of the United States bankruptcy code. In November of 1993, the Debtor/Plaintiff filed his schedules in this case. On June 7, 1994, there was an assignment from First Eastern Bank, now known as PNC Bank, of all of the Bank's right, title and interest in and to the stock to Barbara Weisberger.

The document labeled Plaintiff's Exhibit 5, titled Assignment of Security Interest, indicated that as partial security for extending loans to Marvell Kitchens, Inc., the Plaintiff's company, the Bank took a pledge of and security interest in certain stock owned by Ernest Weisberger, guarantor of the loans, including 3,818 shares of Met. Life State Street Government Income Fund, Certificate number 53101148. Thereafter, on September 19, 1994, the Plaintiff, by letter to State Street Research, requested that the State Street Research Government Income Fund Class A, at account number 5310169992 in the name of Ernest Weisberger be re-registered in the name of Ernest Weisberger and Barbara Weisberger, Joint Ownership With the Right Of Survivorship. On January 9, 1995, the Plaintiff informed the Defendant by letter that both Marvell Kitchens, Inc. and the Plaintiff had filed for bankruptcy. Admitted into evidence is a March 1, 1995 Notice of Levy (Government Exhibit No. 12), a March 23, 1995 Notice of Levy on the Metropolitan Life Insurance Company (Government Exhibit No. 13), a May 1, 1995 Notice of Seizure to State Street Research Income Fund (Government Exhibit No. 14), and a May 1, 1995 Notice of Seizure to Putman American Government Income Fund (Government Exhibit No. 15). Before proceeding, we note that the State Street Fund is the same as the Met. Life State Street Government Fund. (Transcript of 4/17/96 at 64.)

This case, while not presenting bankruptcy issues that are conceptually difficult, was complicated by the introduction of several "red herrings" by both parties. The case was heard over two days of trial and on page 68 of the transcript of the second day on April 17, 1996, the parties were still engaging in a colloquy with the Court trying to establish exactly what the issue was and the relevancy of certain of the documents being admitted into evidence.

The testimonial and documentary evidence indicate that at the time of the filing of the bankruptcy petition, the major interest that was levied on by the Defendant, namely the State Street stock, was held in the name of Ernest Weisberger individually. Thereafter, the First Eastern Bank assigned a security interest to Plaintiff's spouse, Barbara Weisberger, purportedly after Mrs. Weisberger paid off the remainder of a loan due to PNC Bank by Marvell Kitchens, Inc. and guaranteed by Ernest Weisberger. The Court notes that neither Mrs. Weisberger nor a representative of the Bank testified this was accomplished post-petition. Mr. Weisberger,

inarticulate in his testimony, indicated that what was transferred by PNC Bank to Barbara Weisberger was a security interest in the stock which was collateral for the loans to Marvell Kitchens. Thereafter, he wrote a letter to the State Street Government Fund requesting that the fund which was to be subsequently levied on by the Defendant, be re-registered in both his name and Barbara Weisberger's name. Subsequently, the Defendant levied upon the State Street stocks.

Lengthy and convoluted argument was made during the course of this entire trial as to the legitimacy of the levy on the stock. Further argument concerned whether only a security interest was transferred from the Bank to Mrs. Weisberger and whether she had an ownership interest at any point. The extent of Mrs. Weisberger's interest in the stock is precisely an example of a "red herring" which the Court indicates was introduced into this proceeding.

The elemental issue, as ultimately agreed to by the parties, is whether or not the stock levied upon by the Defendant was ever property of the estate. If it was not property of the estate, then there would be no subsequent violation of the stay provisions as found in Section 362 of the Bankruptcy Code.

The evidence indicates that at the time of the filing of the bankruptcy petition, Ernest Weisberger held the stock individually in his name alone. He testified that subsequently the stock was transferred into joint names with his spouse. Notwithstanding that transfer, Mr. Weisberger had a continuous ownership of the stock. We find Mr. Weisberger's testimony as to that point credible and supported by documentation.

The Court also notes that the State Street stock was not the only interest levied upon. There was also a Metropolitan Life Insurance policy and interest on Israeli bonds. Regardless, there is a stipulation that these items were in the sole ownership of Ernest Weisberger at the time of the levy. (Transcript of 4/17/96 at 71.)

With this background, the Court addresses the legal arguments advanced by the parties.

The Code section, which is alleged to have been violated by the Defendant, is found in 11 U.S.C. § 362(c) and reads as follows:

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12 or 13 of this title, the time a discharge is granted or denied.

Defendant argues that the property at issue was not property of the estate because all of the items levied upon had been abandoned by the trustee upon the filing of the Trustee's Report of No Distribution. In support, the Defendant cites *In re Walker,* 151 B.R. 1006 (Bankr.E.D.Ark.1993) and *In re Debeaubien,* 27 B.R. 713 (Bankr.E.D.Tenn. 1983). The argument continues that the automatic stay did not prevent the Defendant from levying against the property after the Plaintiff was granted a discharge. The case of *In re Walker* contains no authority, other than the language of 11 U.S.C. § 554(c), in holding that upon entry of the Trustee's Report of No Distribution, the trustee effectively abandoned any interest of the estate. Likewise, the *In re Debeaubien* case also concluded, without support, that property was abandoned by the trustee after the filing of the final report. The language of 11 U.S.C. § 554(c), however, reads differently than those courts have interpreted. Section 554(c) reads as follows: "Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the *closing* of a case is abandoned to the debtor and administered for purposes of section 350 of this title." (Emphasis ours.)

■ This case has not been ·closed, as that term is used in 11 U.S.C. § 350, and therefore, under the provisions of Section 554(c), the property has not been abandoned. We find this to be the better view than to accept the position espoused by the Defendant. *See also Zlogar v. IRS,* 101 B.R. 1 (Bankr. N.D.Ill.1989) and *In re Moore,* 110 B.R. 924 (Bankr.C.D.Ca.1990). In so concluding, the Court specifically finds that the property was not abandoned by the trustee upon the filing of his no asset report.

During the course of the trial, the parties argued the effects of a previous lifting of the automatic stay in favor of the First Eastern Bank to permit it to exercise any rights it had under state law in the securities. Had the Bank proceeded to liquidate the securities, then the property would not have been property of the estate.

While the record reflects that the stay was lifted on behalf of the Bank, it is devoid of any evidence as to whether the Bank proceeded to a subsequent sale of the stock.

The issue becomes whether the Plaintiff has made a case under Section 362(h). That Section provides in its entirety as follows:

> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Both the Defendant and the Plaintiff have cited the case of *In re Atlantic Business and Community Corp.,* 901 F.2d 325 (3rd Cir. 1990), and its progeny, to support their positions. The *In re Atlantic Business* court quoted, with approval, the following definition from the case of *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989).

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the

act was "willful" or whether compensation must be awarded.

■ The Defendant argues that even though the post-discharge steps taken by the Defendant to collect the taxes were intentional, those steps were clearly taken with the understanding that there was no automatic stay which prohibited the Defendant from issuing the levies because the Debtor/Plaintiff had already received his Chapter 7 discharge. The Defendant maintains that this action is permitted by its operating manual. The Plaintiff counters with an argument that just because the employees of the Defendant follow procedures outlined in the IRS manual does not mean that they cannot be held accountable for those actions pursuant to Section 362(h). The case of *In re Atlantic Business* instructs that whether a party believes in good faith that it had a right to the property is not relevant to whether the act was willful or whether compensation must be awarded. Even a good faith belief that a party is not violating a stay is insufficient to escape liability. *See In re University Medical Center,* 973 F.2d 1065, 1088 (3rd Cir. 1992).

With this instruction from the circuit court, we analyze the actions taken post-discharge by the Defendant in its collection efforts against the Plaintiff. Questioning of several employees of the Internal Revenue Service focused on a part of the IRS manual at page 5700–186.4, captioned as "TC 521 Criteria." This portion of the manual was introduced as Government Exhibit No. 9. TC 521 Criteria reads, in its entirety, as follows:

**TC 521 Criteria**

(1) TC 521 should be input when the TC 520 freeze is not required to enable the Service to comply with the provisions of the Bankruptcy Code.

(2) In non-court order districts the following guidelines determine when TC 521 should be input:

> (a) For an individual Chapter 7 No Asset case, TC 521 should be input when the discharge has been granted or denied or when the proceeding is closed or dismissed by the court; whichever action occurs first.

(b) TC 521 should be input, in an individual Chapter 7 Asset proceeding when the proceeding is closed or immediately upon notification of the discharge or other event terminating the automatic stay. However, individual Chapter 7 Asset cases should remain open whenever there is information indicating that all, or substantially all, of the Service's claim will be paid.

(c) In a corporate or partnership Chapter 7 proceeding where no discharge is granted, SPf should close the case when all taxes are satisfied, i.e., the proof of claim is paid or the accounts are reported currently not collectible. See IRM 57(13)4.54.

It is this paragraph which dictated the procedures taken by the Defendant when determining the proper time to proceed with levies during a debtor's bankruptcy.

The first witness was Mr. Michael Stumpo, the Special Procedures Advisor in the Special Procedures Branch of the Internal Revenue Service, located in Philadelphia, Pennsylvania. He indicated that a 520 transaction code would be entered on the computer indicating that the individual debtor was in bankruptcy. Thereafter, a transaction code of 521 meant a reversal of transaction code 520. He further indicated that the 520 transaction code would stay on the computer as long as the bankruptcy was "in question or in litigation." (Transcript of 4/17/96 at 80.) Mr. Stumpo testified that he confirmed the legitimacy of the levy with a field representative, Mr. Handlong. Relying on the language found in the IRS manual listed above and the fact that a discharge had been granted, Mr. Stumpo and Mr. Handlong agreed as to the appropriateness of the levy. Based upon his training and the language of Government Exhibit No. 9, Mr. Stumpo determined that the property levied upon was not property of the bankruptcy estate and he communicated that to Mr. Handlong. (Transcript, *supra*, at 93.) Mr. Stumpo further equated a discharge with a case being closed. (Transcript, *supra*, at 95.) Mr. Stumpo testified that the policy and procedure followed by the Defendant is that at the entry of a discharge in bankruptcy, the TC 521 reversal entry

would be warranted. (Transcript, *supra*, at 100.)

The next witness to testify was Raymond Handlong, who was responsible for the levy upon the stocks and other assets. Mr. Handlong echoed the position of Mr. Stumpo that once the discharge was entered, he assumed that the debtor was out of bankruptcy. (*See* Transcript, *supra*, at 115.) Mr. Handlong also testified that the levy of the Plaintiff's assets was consistent with the provision of the IRS manual found on Government Exhibit No. 9. Mr. Handlong indicated that whether or not the case was closed prior to the levy was not an issue with the Defendant because a discharge had been entered in a no-asset case. (Transcript, *supra*, at 124.)

The final witness to testify was Mr. Lou Keyser, Collection Group Manager in the Scranton, Pennsylvania, field office for the Internal Revenue Service. Once again, Mr. Keyser testified that the 521 code indicates that there had been a proceeding but that the bankruptcy proceeding was over at discharge. (Transcript, *supra*, at 171.) He further indicated that once the discharge is entered in a no-asset case, there is no automatic stay in place and, therefore, the assets are available for collection. (Transcript, *supra*, at 171.) Mr. Keyser parroted the testimony of the other defense witnesses as to his understanding of the procedures contemplated by the TC 521 Criteria in collection in no-asset cases after a discharge had been entered. He indicated that there was no doubt in his mind that the property levied upon was Mr. Weisberger's. (Transcript, *supra*, at 183.) Upon cross-examination, however, he testified that his training never made a distinction between actions taken against property of the estate and actions taken against a debtor, individually, after a discharge had been entered. (Transcript, *supra*, at 187.) Furthermore, he never discussed the distinction with either Mr. Handlong or Mr. Stumpo.

■ Based upon the above testimony, the Court holds that the actions taken by the Defendant through all of its field representatives and the Special Procedures Branch, regardless of whether those actions were taken in compliance with IRS procedures, were

a violation of the automatic stay under Section 362(h). It does not matter whether the Defendants acted in good faith thinking they had every right to proceed to levy. The fact remains that the acts taken by the Defendant were intentional and that they were in violation of the automatic stay.

Important to the Court's determination, though, is that there must be injury from the willful disregard of the automatic stay. *In re Micro Marketing International,* 150 B.R. 573, 575 (Bankr.M.D.Pa.1992). What was the injury in this case?

The Plaintiff has vehemently argued throughout the life of this adversary that, at all times, the property levied upon was property of the estate. When a Chapter 7 case is filed under the Bankruptcy Code, an estate is created as of the date of the filing. 11 U.S.C. § 541(a). Furthermore, Section 521(4) instructs that the debtor is required to turn over all of that property to the trustee. Had the Defendant reversed the levies or turned over the funds to the Plaintiff, the Plaintiff would have been required to turn those funds over to the trustee. In return, the funds would have been at the trustee's disposal. This result, however, changes if the debtor claims an exemption in any of those assets.

While considerable confusion existed during the trial as to the relationship of the Israeli bonds, the proceeds of which were levied on, and "Israeli Paper," which was exempted, on at least two occasions in the trial, they were referred to as separate and distinct items. (Transcript of 12/5/95 at 20 and Transcript of 4/17/96 at 73.) Ergo, the Defendant did not levy on exempt assets. Rather, its levy was solely directed at assets that would have been administered by the Chapter 7 trustee.

Based upon the forgoing, the levies are void. *Raymark Industries, Inc. v. Lai,* 973 F.2d 1125 (3rd Cir.1992). The Court orders that the Defendant reverse the levies on all the assets levied upon and transmit to the trustee either those assets or the equivalent value of those assets.

Without evidence of any injury to the Plaintiff, however, the Court declines to award further damages.

Count II and Count III of the Complaint were brought under 26 U.S.C. §§ 7426 and 6331, respectively. The Court notes that at a pre-trial conference held on September 22, 1995, counsel for the Plaintiff withdrew Count II of the Complaint from this Court's consideration. Count III requests, inter alia, that the Court declare the seizure of the subject property null and void and award the Plaintiff both compensatory and punitive damages under 26 U.S.C. § 6331. The Defendant responds that 26 U.S.C. § 6331 does not create for the Plaintiff a cause of action. Rather, the Plaintiff must proceed under 26 U.S.C. § 7433 and under that section only the district court has jurisdiction to hear those cases. After a review of both sections, the Court agrees that it does not have jurisdiction to impose damages under 26 U.S.C. § 6331. Further, because the Court has already reversed the voided levies, it need not address the propriety of those levies under 26 U.S.C. § 6331.