**In re Alexander F. BEATON and Judy C. Beaton, Debtors.**

**Bankruptcy No. 96–06565–BGC–7.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

July 7, 1997.

Order Denying Reconsideration,
July 7, 1997.

Ted Stuckenschneider, Birmingham, AL, for Debtors.

Fred Garfield, Birmingham, AL, for trustee.

Dennis Schilling, Birmingham, AL, for Cahaba Millworks, Inc.

## ORDER DENYING DEBTOR'S MOTION AND REQUEST FOR ORDER TO CLOSE THE CASE

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court on the *Motion and Request for Order to Close the Case* filed by the debtors. A hearing was held on April 14, 1997. Mr. Ted Stuckenschneider, the debtors' attorney; Mr. Max Pope, Sr., the trustee; Mr. Frederick Garfield, the attorney for the trustee; and Mr. Dennis Schilling, the attorney for Cahaba Valley Millwork, Inc., appeared. The motion was heard and submitted on the stipulations of counsel and the record in this case.

### I. Findings of Fact

The debtors filed their Chapter 7 case on September 19, 1996. In "Schedule A" entitled "Real Property" which was filed by the debtors as part of their bankruptcy petition, the debtors list as assets three parcels of real property. These are their personal residence, a certain "Kingsridge" condominium, and a certain "Waterford" condominium.[1] The residence is valued by the debtors at $380,000, the "Kingsridge" condominium is valued by the debtors at $27,000, and the "Waterford" condominium is valued by the debtors at $75,000. In "Schedule D" entitled "Creditors Holding Secured Claims," the debtors list secured creditors who hold liens on the parcels of property described in "Schedule A." According to the debtors' "Schedule D", the residence is encumbered by two liens which secure debts totaling

---

1. The debtors' bankruptcy petition reflects that each of the parcels is owned jointly by the debtors.

$371,000; the "Kingsridge" condominium is encumbered by one lien which secures a debt of $24,000; and the "Waterford" condominium is encumbered by one lien which secures a debt of $78,000.

Ostensibly based on the debtors' apparent lack of equity in the real property listed by them in their bankruptcy petition, the trustee initially decided not to administer the property. On October 25, 1996, the day following the first meeting of creditors, the trustee filed a document entitled "Final Report of Trustee in No Asset Case." In that document, the trustee reported that ". . . I have made diligent inquiry into the whereabouts of property belonging to the estate; and that there are to the best of my knowledge no assets in the estate over and above the exemptions lawfully claimed by the Debtors. Unless the Court orders otherwise, I deem abandoned any and all property of the estate that is unadministered as of the date of this report."

In anticipation of the trustee's decision not to administer the real property, the debtors negotiated reaffirmation agreements for the debt secured by the second mortgage on their residence and the mortgage debt owed on the "Waterford" condominium and also filed a motion to avoid a judgment lien on their residence. The agreement regarding the second mortgage debt owed on the debtors' residence was entered into on October 24, 1996, the day prior to the date the trustee filed his final report. The formal reaffirmation agreement, which memorializes the agreement entered into by the debtors' and their second mortgagee on October 24, was not filed with the bankruptcy court until November 21, 1996. The reaffirmation agreement with the holder of the mortgage on the "Waterford" condominium was also executed by the debtors on October 24, 1996, but was not filed with the bankruptcy court until November 4, 1996.

**2.** The letter attached as Exhibit F to the debtors' *Memorandum Statement of Facts* (Proceeding No. 30), also makes reference to the stock of Scotia Construction Company, Inc. as part of the property to be purchased from the trustee. While the debtors indicated in their statement of affairs that Mr. Beaton formerly did business under the auspices of Scotia Construction Company, Inc., the debtors did not list any stock of that entity in

Subsequent to the date that the trustee filed his no-asset final report, he received notice that a creditor, Cahaba Valley Millworks, had an interest in purchasing the estate's interest in the real property scheduled by the debtors in their bankruptcy petition. In response to this expression of interest, on December 20, 1996, the trustee sent a letter to the clerk of the bankruptcy court which consists of the following sentence: "Please withdraw my Final No Asset Report filed in the above referenced case." By letter dated February 11, 1997, Cahaba Valley Millworks communicated an offer to purchase the estate's interest in the real properties scheduled by the debtors', as well as three parcels of real property lost by the debtors' to foreclosure prior to bankruptcy, for $20,000.[2] The letter recites the creditor's understanding and intent that $10,000 of the purchase money will be paid by the trustee to the debtors as their homestead exemption.

## II. Legal Contentions and Conclusions of Law

The debtors contend that the filing by the trustee of his no-asset final report, in which he states that he "deem[s] abandoned any and all property of the estate that is unadministered as of the date of this report," constituted an irrevocable abandonment by the trustee of the real property scheduled by the debtors and that the property is, therefore, no longer part of the bankruptcy estate and cannot now be sold or otherwise administered by the trustee. The trustee contends that the filing by him of a no-asset final report does not, by itself, result in an abandonment of estate property. The trustee contends that abandonment may be accomplished only pursuant to 11 U.S.C. § 554 after notice to all creditors and a hearing or upon the closing of the bankruptcy estate.

Section 554 of the Bankruptcy Code is entitled "Abandonment of property of the estate" and provides:

their schedule of personal property. No issue has been made in this proceeding regarding that stock. Suffice to say, however, in relation to the issues involved in this proceeding, that since the stock was not scheduled by the debtors, it cannot be abandoned by operation of law under section 554(c) but may only be abandoned after notice and a hearing under sections 554(a) or (b).

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, any property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554.

■ Based on the language of the statute, this Court finds that the meaning of the statute is plain.[3] Scheduled property may be abandoned *by the trustee* after notice to all creditors and a hearing; or, scheduled property, which is not administered by the trustee, is abandoned *by operation of law* upon the formal closing of the bankruptcy case.[4] The statute does not mention a trustee's final report or otherwise authorize a trustee to abandon property solely by filing any document with the bankruptcy court which is not accompanied by notice and a hearing.[5] These notice and hearing requirements serve to protect the trustee, who often must make decisions based on incomplete or less than candid information supplied by debtors, but they serve to protect creditors from improvident, ill-advised or hasty decisions by bankruptcy trustees.[6] These benefits would be eviscerated if a trustee is allowed to abandon property by simply filing a statement with the bankruptcy court of his intent to do so. From a statutory perspective, this Court finds that the trustee did not abandon the property subject to this proceeding.

From an equitable perspective, the debtors argue that they should be able to rely on and

---

**3.** "[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).

**4.** Bankruptcy Rule 6007(a) requires the trustee to give all creditors 15 days notice of a proposed abandonment of property.

**5.** The concept of abandonment began as judge-made law formulated decades prior to enactment of the Bankruptcy Code. There was no provision of the Bankruptcy Act which defined or governed abandonment. Under the Act, abandonment was born from the equitable concept of estoppel and the determination of whether property had been abandoned centered around the conduct, words or inaction of the trustee. 2 James M. Henderson, Remington on Bankruptcy §§ 1142–1148 (1956). The preferred practice of abandonment, under the case law as it ultimately developed, was for the trustee to notify creditors and obtain an order endorsing the proposed abandonment from the bankruptcy referee. "To obviate subsequent criticism, it is advisable to notify the creditors before definitely abandoning any asset which might possibly have substantial value. There is no rule or statutory requirement to this effect, but certain practical aspects will be

recognized by anyone familiar with this field of enterprise." *Id.* at § 1144 p. 625. In 1973, however, the preferred practice was formally recognized by adoption of former Bankruptcy Rule 608 which governed procedure under the Act and provided:

> The court may, on application or its own initiative and after hearing on such notice as it may direct, approve the abandonment of any property and, without reopening the case, may direct the abandonment of any property of inconsequential value discovered after a case is closed. If a case is closed without administration of property of the estate that has been scheduled, the property shall be deemed to have been abandoned with the approval of the court, and on request the court may, without reopening the case, enter an order approving the abandonment.

Rules Bankr.Proc. Rule 608, 11 U.S.C. (1982 ed.)

Congress, in enacting the present section 554, further refined the law of abandonment, and eliminated needless litigation by making *notice to creditors* or *closing of the case* mandatory for effective abandonment of scheduled property. Strict statutory requirements were substituted for the old "common law" standard which hinged on often difficult or nebulous factual determinations regarding the intent of the trustee.

**6.** There is no evidence that any of these events occurred in this case.

make decisions based on the statements contained in the trustee's final report. They also contend that, based on the representations of abandonment contained in the final report, that they have spent considerable effort to preserve the possession and ownership of their real properties.

 Although the requirements of the statute are plain, litigation at this level indicates how reasonable interpretations may differ. Nonetheless, the debtors, not creditors or the trustee, must suffer the consequences of the debtors' actions. Section 554(b) provides a procedure for those who wish to secure abandonment of property prior to the closing of a bankruptcy case. Notwithstanding their reliance on the trustee's actions, the debtors did not follow that procedure.[7]

Because this case has not been closed, the real property scheduled by the debtors has not been abandoned by operation of law pursuant to section 554(c). Because creditors were not provided notice of the filing by the trustee of his no-asset final report, the mere filing of that report was ineffective to abandon the real property scheduled by the debtors pursuant to section 554(a).[8] Because neither the debtors, nor any other party in interest, has filed a request for this Court to order the trustee to abandon the real property scheduled by the debtors, abandonment of that property has not been effected under section 554(b). And because that real property has not been abandoned in any manner authorized under 11 U.S.C. § 554, it remains, by virtue of section 554(d), property of the bankruptcy estate and may be administered by the trustee.

## III. Conclusion

For the reasons above, the Court finds that the *Motion and Request for Order to*

---

7. Either in reliance on the abandonment language contained in the trustee's no asset report or in anticipation of the abandonment of the properties by the trustee, the debtors reaffirmed debts to two creditors holding mortgages on the properties. The time allowed under 11 U.S.C. § 524(c)(4) for rescission of those reaffirmation agreements by the debtors has expired. Under Alabama law, however, a party may obtain rescission of a contract where there is "a mistake, shared by both parties to the contract, as to some fundamental matter forming the inducement to the contract." *Glenn v. City of Birmingham,* 223 Ala. 501, 502, 137 So. 292, 293 (1931). Ostensibly, the understanding of both the debtors and the mortgagees was that the trustee could no longer administer the real properties which secure the debts reaffirmed and that the debtors would retain ownership and possession of the real properties. Furthermore, it is manifest that the parties must have understood that the debtors would not have reaffirmed the mortgage debts if they were not to be allowed to retain the properties. If the trustee sells the properties to Cahaba Valley Millworks, the debtors and mortgagees will have been mutually mistaken as to the subject matter which constituted the very basis of the reaffirmation agreements. As a court of equity, this Court may prevent any prejudice to the debtors that may occur if the trustee sells the properties, by allowing them to rescind their reaffirmation agreements with the mortgagees on the basis of mutual mistake. *See In re Hitt,* 137 B.R. 401, 405 (Bankr.D.Mont.1992)(debtor allowed to rescind reaffirmation agreement where debtor's mistaken belief that the secured creditor had a perfected security interest was the "driving force" for the reaffirmation agreement and security interest was avoided by trustee after reaffirmation); *Mandrell v. Ford Motor Credit Co. (In re Mandrell),* 50 B.R. 593, 595–596 (Bankr.M.D.Tenn. 1985)(at time of reaffirmation, debtor and secured creditor labored under mutual mistake of fact that creditor had enforceable lien against the debtor's automobile so that debtor would be allowed to rescind reaffirmation agreement where security agreement was subsequently avoided by trustee); *cf. General Electric Credit Co. v. Eassa (In re Eassa),* 19 B.R. 153, 154 (Bankr.S.D.Ohio 1982)(creditor allowed to rescind reaffirmation where creditor's attorney provided in agreement only for principal and neglected to include finance charges and debtor must have known from disparity between amount owed prior to bankruptcy and amount of agreement that mistake had been made).

8. *Schwaber v. Reed (In re Reed),* 940 F.2d 1317, 1321 (9th Cir.1991); *Weisberger v. United States (In re Weisberger),* 205 B.R. 727, 731 (Bankr. M.D.Pa.1997); *Figlio v. American Management Servs., Inc. (In re Figlio),* 193 B.R. 420, 423 (Bankr.D.N.J.1996); *In re Heil,* 141 B.R. 112, 114 (Bankr.N.D.Tex.1992); *Israel v. Internal Revenue Service (In re Israel),* 112 B.R. 481, 482 n. 3 (Bankr.D.Conn.1990); *In re Moore,* 110 B.R. 924, 926 (Bankr.C.D.Cal.1990); *In re Zobenica,* 109 B.R. 814, 819 (Bankr.W.D.Tenn.1990); *Zlogar v. Internal Revenue Service (In re Zlogar),* 101 B.R. 1, 3 n. 3 (Bankr.N.D.Ill.1989); *Schwaber v. Reed (In re Reed),* 89 B.R. 100, 103 (Bankr. C.D.Cal.1988) *aff'd,* 940 F.2d 1317, 1321 (9th Cir.1991); *Behrens v. Woodhaven Ass'n,* 87 B.R. 971, 973 n. 1 (Bankr.N.D.Ill.1988). *Contra Huntington Nat'l Bank v. Hunter (In re Hunter),* 76 B.R. 117, 119 (Bankr.S.D.Ohio 1987).

*Close the Case* filed by the debtors is due to be denied.[9]

It is therefore **ORDERED, ADJUDGED AND DECREED** that the *Motion and Request for Order to Close the Case* is **DENIED.**

## ORDER DENYING MOTION TO RECONSIDER OR IN THE ALTERNATIVE TO ALTER AND AMEND

On June 18, 1997 the debtors filed a *Motion to Reconsider or in the Alternative to Alter and Amend* which asks this Court to reconsider its June 9, 1997 order denying the debtors' *Motion and Request for Order to Close the Case.* After notice, a hearing in a related adversary proceeding was held on June 23, 1997. Ted Stuckenschneider, the attorney for the debtors; Dennis Schilling, the attorney for Cahaba Valley Millwork, Inc.; and Frederick Garfield, the attorney for the trustee, appeared. Although the *Motion to Reconsider or in the Alternative to Alter and Amend* was not scheduled to be heard on June 23, 1997, all parties involved were present, agreed to present oral arguments and agreed that the matter should then be submitted to the Court.

### I. Background

The debtors' *Motion to Reconsider or in the Alternative to Alter and Amend* requests the Court to consider the impact of Rule 5009 on the debtors' *Motion and Request for Order to Close the Case.* The Court has considered that impact and, based on the reasons expressed below, finds that its June 9, 1997 order should not be altered, amended or modified.[1]

Rule 5009 reads:

If in a chapter 7, chapter 12, or chapter 13 case the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered.

Fed. R. Bankr.P. 5009.

### II. Additional Findings of Fact and Conclusions of Law

#### A. Case Audit and Closing Functions

■ Rule 5009 was amended in 1991. That amendment was not intended as a substantive change to the administration of assets in bankruptcy cases, but was an amendment to identify and to clarify bankruptcy case auditing and closing functions for bankruptcy courts, Bankruptcy Administrators and United States trustees.

Prior to 1991, Rule 5009, other than a substitution of the word "When" for "After" was identical to Section 350 of the Bankruptcy Code. That section read, "After [When] an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350 (parenthetical added). The 1991 amendment to Rule 5009 was designed to correct this duplication and to separate the court's ministerial, case closing functions from the case auditing functions of Bankruptcy Administrators and U.S. trustees.[2] The Committee Notes from June

---

9. One of the debtors' original contentions was that the bankruptcy case should be closed. On February 20, 1997, an adversary proceeding was filed against the debtors by Cahaba Valley Millworks, Inc. In response to that adversary proceeding, the debtors filed a counterclaim for damages based on pre-bankruptcy actions and conduct of Cahaba Valley Millworks. The debtors did not, however, disclose their cause of action against Cahaba Valley Millworks in their bankruptcy petition. The debtors concede that because the cause of action was not scheduled by them, it has not been abandoned by the trustee and remains property of the bankruptcy estate and that the estate must remain open for the purpose of allowing the trustee to administer that asset.

1. For purposes of this order, the Court adopts its June 9, 1997, Findings of Fact and Conclusions of Law.

2. Pursuant to 11 U.S.C. § 350(a), the court shall close a case after the estate is fully administered and the court has discharged the trustee. To effectuate this procedure, Fed. R. Bankr.P. 5009 was amended in 1991 to provide that once the panel trustee has filed a final report and final account and has certified that the estate has been fully administered, a presumption of full administration is created if no objection is filed within thirty days. The court may discharge the panel trustee and close the case without any further independent review of the trustee's final report and final account.

15, 1989 and June 12, 1990 submissions of proposed rule changes explain.[3]

The Committee Note to the June 15, 1989 proposed amendment to Rule 5009 reads:

### Committee Note

This rule is amended to delete language that merely duplicates § 350(a) of the Code and to provide a procedure for the closing of chapter 7, chapter 12, and chapter 13 cases.

The final report and account of the trustee is required to be filed with the court and the United States trustee under §§ 704(9), 1106(a)(1), 1202(b)(1), and 1302(b)(1). Subdivision (b) recognizes that the United States trustee, who has a statutory duty to supervise trustees in chapter 7 cases and to perform other administrative functions in cases under chapters 7, 11, 12, and 13 pursuant to 28 U.S.C. § 586, should review all final reports and accounts. The certification procedure is intended to avoid duplication of services by the court and the United States trustee in connection with a review of the final report and account. Although the court should not routinely review trustee reports and accounts, the court has the judicial responsibility under § 350(a) of the Code to determine whether the estate has been fully administered and whether the trustee should be discharged. The presumption created by the United States trustee's certification may be rebutted in which event the court would resolve the issues relating to the closing of the case. If the presumption is not rebutted, the trustee is discharged and the case is closed without a review by the court of the trustee's final report and account. Rule 301 of the Federal Rules of Evidence on the effects of a presumption applies in cases under the Code pursuant to Rule 9017 of these Rules.

Failure or delay of the United States trustee in promptly reviewing the final report and account or in promptly making a motion to close the case should not prevent the debtor or trustee from initiating the request for an order closing the case. After a motion by the debtor or the trustee, the court should give the United States trustee a reasonable time to file a certification. In the absence of the certification, the court may review the final report and account and determine whether the estate has been fully administered or may order the United States trustee to file a certification or submit reasons why one cannot be filed.

Committee Note to June 15, 1989 Submission (Reprinted in Bankruptcy Code, Rules & Official Forms, Southeastern Bankruptcy Law Institute, Inc., 16th Annual Seminar, The Lawyers Co–Operative Publishing Co., 1031, 1167–69 (1990)).[4]

*Case Management Manual for United States Bankruptcy Judges,* Federal Judicial Center, 1995 with case annotations at 80.

3. The Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States submits proposed changes to the Conference. These changes are subject to public comment, approval by the Conference and approval by the Supreme Court of the United States. After comments and after approval by the Conference and the Court, the proposed changes are submitted to Congress. If the rules are not amended by Congress in their submitted form, the rules become effective at a specified time.

4. The proposed rule read:
 Rule 5009. Closing Cases
 ~~When an estate has been fully administered and the court has discharged the trustee, the case shall be closed.~~
 *(a) MOTION TO CLOSE CASE. In a chapter 7, chapter 12, or chapter 13 case, after the trustee files and transmits to the United States trustee a final report and account of the admin-* *istration of the estate, the court, on its own motion or on a motion by the United States trustee, the trustee, or the debtor, shall discharge the trustee and close the case if the court finds that the estate has been fully administered. Copies of the motion shall be served on the debtor, the trustee, and any committee elected in the case, and shall be transmitted to the United States trustee.*
 *(b) CERTIFICATION BY UNITED STATES TRUSTEE. If, in connection with a motion made under subdivision (a) of this rule, a statement is filed by the United States trustee certifying that the United States trustee has reviewed the trustee's final report and account and that the United States trustee has determined that the estate has been fully administered, there shall be a presumption that the estate has been fully administered and, in the absence of evidence to the contrary, the trustee shall be discharged and the case shall be closed.*
 *(c) PAYMENT OF FEE. In a chapter 7 liquidation case, the trustee shall be paid the fee provided in § 330(b) promptly after (1) the Unit-*

762

The Committee Note to the June 12, 1990 proposed amendment to Rule 5009 reads:

## COMMITTEE NOTE

The final report and account of the trustee is required to be filed with the court and the United States trustee under §§ 704(9), 1202(b)(1), and 1302(b)(1) of the Code. This amendment facilitates the United States trustee's performance of statutory duties to supervise trustees and administer cases under chapters 7, 12, and 13 pursuant to 28 U.S.C. § 586. In the absence of a timely objection by the United States trustee or a party interest, the court may discharge the trustee and close the case pursuant to § 350(a) without the need to review the final report and account or to determine the merits of the trustee's certification that the estate been fully administered.

Rule 3022 governs the closing of chapter 11 cases.

Committee Note to June 12, 1990 Submission (Reprinted in Bankruptcy Code, Rules & Official Forms, Southeastern Bankruptcy Law Institute, Inc., 17th Annual Seminar, The Lawyers Co-Operative Publishing Co., 1051, 1167–69 (1991)).[5]

Based on the above, this Court does not believe that any substantive change in administration of assets was intended by, or occurred from, the 1991 amendment to Rule 5009. This Court continues to believe that its June 9, 1997, analysis, based on operation of Bankruptcy Code section 554, is correct.

## B. Presumption in Rule 5009

The debtors argue that under Rule 5009 the pending case was presumed to be fully administered when the trustee filed his final report. The debtors conclude, based on that presumption, that the debtors had a right to rely on the trustee's report and the Court should have closed the pending case shortly after the filing of the report.[6] The Court disagrees for three reasons.

First, unless a trustee *certifies that a case has been fully administered,* there is no presumption that the case has been fully administered. The language of Rule 5009 is clear. When a trustee "has certified that the estate has been fully administered ... there shall be a presumption that the estate has been fully administered." Fed.R.Bankr.P. 5009. The presumption raised in Rule 5009 occurs only because of, and after, a trustee's certification that an estate has been fully administered. The above Committee Notes clearly explain the purpose of the certification. The certification in turn was clearly the method of achieving separation of duties in the auditing and closing of cases. Only after such a certification do the time limits

---

*ed States trustee files a statement certifying that the United States trustee has reviewed the trustee's final report and account and has determined that the trustee's services have been fully rendered, or (2) the court closes the case.*

*(d) CHAPTER 11 CASES. A chapter 11 case shall be closed when a final decree is entered pursuant to Rule 3022.*

June 15, 1989 Submission of the Advisory Committee on Bankruptcy Rules, Judicial Conference of the United States (Reprinted in Bankruptcy Code, Rules & Official Forms, Southeastern Bankruptcy Law Institute, Inc., 16th Annual Seminar, The Lawyers Co-Operative Publishing Co., 1031, 1167–69 (1990)).

**5.** The proposed rule, which became existing Rule 5009, differs from the earlier one principally in that the case trustee, not the U.S. Trustee, certifies that the case has been fully administered. That proposal read:

Rule 5009: Closing *Chapter 7 Liquidation, Chapter 12 Family Farmer's Debt Adjustment, and Chapter 13 Individual's Debt Adjustment* Cases

~~When an estate has been fully administered and the court has discharged the trustee, the case shall be closed.~~

*If in a chapter 7, chapter 12, or chapter 13 case the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered.*

June 12, 1990 Submission of the Advisory Committee on Bankruptcy Rules, Judicial Conference of the United States (Reprinted in Bankruptcy Code, Rules & Official Forms, Southeastern Bankruptcy Law Institute, Inc., 17th Annual Seminar, The Lawyers Co-Operative Publishing Co., 1051, 1167–69 (1991)).

**6.** The debtors further argue that if the Court had closed the case in what they contend would have been timely, that the matters pending now would not have materialized.

affecting Bankruptcy Administrators and United States Trustees come into play and only after that certification may the Court presume that a case *has been fully administered,* an occurrence of great importance in a court's decision to close a case. The *Final Report of Trustee In No Asset Case* in this case did not certify that the "estate has been fully administered." Consequently, there could not have been a presumption that this case was fully administered.

■ Second, as a practical matter, this Court does not believe that the pending case would have been closed, even under the best of circumstances, in the time period between the filing of and withdrawal of the final report. Even if the trustee had certified that the case was "fully administered," the Bankruptcy Administrator would have been allowed 30 days to object to the trustee's certification. This too is a requirement that must be satisfied before any presumption arises. The language of Rule 5009 is clear. The presumption arises only after a trustee's certification, *"and* if within 30 days no objection has been filed. . . ." Fed.R.Bankr.P. 5009 (emphasis added). The trustee asked to withdraw his *Final Report of Trustee In No Asset Case* on December 26, 1996. Only 31 days would have elapsed between what would have been the end of the Administrator's 30 objection period and the trustee's request. Whatever actions the debtors took during that brief period most likely would not have been protected by a case closing, even if there had been a certification.

■ Third, even if there is a presumption that a case is fully administered, that presumption is rebuttable. In the pending case, if the Court considers only that the debtors failed to schedule all of their assets, there is sufficient evidence to rebut any presumption that may arise in this case.

## C. Effect of Rule 5009 on the Bankruptcy Code

■ In its June 9, 1997 order the Court based its denial of the debtors' motion on the plain language of the Bankruptcy Code. If the Court accepts the debtors' position that Rule 5009 explains or alters that plain language, or that Rule 5009 in some way allows a different result than does the plain language of the Code, the Court must accept that Rule 5009 changes the Code, or at least that Rule 5009 changes this Court's June 9, 1997 interpretation of the Code. While the Court does not accept this position, if the debtors are correct, this Court would find that their position would create a conflict between the Rule and the Code that must be resolved in favor of the Code. There is general agreement that if there is a conflict between Federal Rules of Bankruptcy Procedure and the Bankruptcy Code the conflict must be resolved in favor of the Bankruptcy Code. *United States v. Towers (In re Pacific Atlantic Trading Co.),* 33 F.3d 1064, 1066 (9th Cir.1994). There is also general agreement that there is a strong presumption that substantive rights are not abridged or modified by adoption of rules of procedure. *In re Decker,* 595 F.2d 185, 188–89 (3rd Cir.1979); *Benjamin v. Diamond (In re Mobile Steel Company),* 563 F.2d 692, 699 (5th Cir.1977).[7] Consequently, if the debtors are correct that Rule 5009 alters the meaning of the Bankruptcy Code, this Court finds that such a position creates a conflict between Rule 5009 and the Bankruptcy Code, and as such the Code prevails.

## D. Rule 6007

■ The debtors argue that Rule 5009, if read in conjunction with Rule 6007, yields the above discussed presumption. Procedures for abandonment of property are specifically controlled by Rule 6007. This Court does not believe that the generalities of Rule 5009 alter Rule 6007 or the Bankruptcy Code.

## III. Order

For the reason stated above, the Court finds that the debtors' *Motion to Reconsider or in the Alternative to Alter and Amend* the Court's June 9, 1997 order is due to be denied. It is therefore **ORDERED, ADJUDGED and DECREED** that:

---

**7.** The statute that allows adoption of the rules reads in part, "Such rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075.

1. The debtors' *Motion to Reconsider or in the Alternative to Alter and Amend* is **DENIED**;

2. A conference on all pending matters will be scheduled, by a separate notice, for July 28, 1997 in Courtroom 4 of the Robert S. Vance Federal Building, 1800 Fifth Avenue North, Birmingham, Alabama.